# In re Fructoso LUVIANO-Rodriguez, Respondent[1]

File A92 569 244 - Los Angeles

*Decided February 29, 1996*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A conviction for a violation of a firearms offense that has been expunged pursuant to section 1203.4 of the California Penal Code will not support a finding of deportability under section 241(a)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2)(C) (1994). *Matter of Ibarra-Obando*, 12 I&N Dec. 576 (BIA 1966; A.G. 1967); and *Matter of G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961), followed.

FOR RESPONDENT: Christine E. Stancill, Esquire, South Pasadena, California

BEFORE: Board En Banc: SCHMIDT, Chairman; VILLAGELIU, ROSENBERG, MATHON, and GUENDELSBERGER, Board Members. Concurring Opinion: HEILMAN, Board Member, joined by FILPPU and COLE, Board Members. Concurring and Dissenting Opinion: HOLMES, Board Member, joined by DUNNE, Vice Chairman. Dissenting Opinion: HURWITZ, Board Member, joined by VACCA, Board Member.

MATHON, Board Member:

In a decision dated April 26, 1994, the Immigration Judge found the respondent deportable under section 241(a)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(C) (1994), as an alien convicted of a firearms offense, denied his request for voluntary departure, and ordered him deported. The respondent appealed from that decision. On appeal, the respondent has submitted new evidence and has requested that the proceedings be terminated or, in the alternative, that the record be remanded to the Immigration Judge. The motion to remand will be granted and the record will be remanded pursuant to 8 C.F.R. § 3.1(d)(2) (1995) for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a 26-year-old native and citizen of Mexico who entered the United States on January 21, 1983. The record reflects that his status was

---

[1] We note that the Board's decision in this case is pending before the Attorney General upon certification at the time of publication.

adjusted to that of lawful permanent resident on December 1, 1990. It further reflects that the respondent was convicted upon a plea of nolo contendere on March 22, 1993, in the Municipal Court of Los Angeles Judicial District, County of Los Angeles, State of California, of carrying a concealed weapon, a .38 caliber handgun, in a vehicle, a misdemeanor under section 12025(A)(1) of the California Penal Code. On appeal and in connection with a motion to remand, the respondent has submitted as additional evidence a copy of an order from the California criminal court dated July 15, 1994, setting aside his plea and dismissing the concealed weapon complaint against him pursuant to section 1203.4 of the California Penal Code.

At his deportation hearing, the respondent denied the allegation of the Order to Show Cause and Notice of Hearing (Form I-221) that he was convicted of the above firearms offense, and he denied the charge of deportability. Through counsel, the respondent sought adjournment of the proceedings pursuant to *Matter of Tinajero*, 17 I&N Dec. 424 (BIA 1980), in order to seek expungement of his conviction. The Immigration Judge denied his request, noting that *Matter of Tinajero, supra*, did not apply to a firearms offense, and found the respondent deportable as charged. He further concluded that the respondent was not statutorily eligible for the relief of voluntary departure.

## II. ISSUES ON APPEAL

The respondent initially argues that the Immigration Judge erred in denying his request for a continuance to pursue expungement of his firearms conviction. He claims that the Immigration Judge improperly interpreted *Matter of Tinajero, supra*, as applying only to crimes involving moral turpitude.

On appeal, he has submitted as additional evidence a copy of an order from the California criminal court dated July 15, 1994, setting aside his plea and dismissing the concealed weapon complaint against him pursuant to section 1203.4 of the California Penal Code. He asserts that his conviction has therefore been eliminated as the basis for the charge of deportability and that the proceedings should be terminated or, in the alternative, that the record should be remanded to the Immigration Judge.

The respondent finally contends that the Immigration Judge erred in denying his request for voluntary departure. He claims that the Immigration Judge improperly interpreted section 244(e)(1) of the Act, 8 U.S.C. § 1254(e)(1) (1994), as precluding him from establishing statutory eligibility for that relief. The respondent asserts that the statutory clause barring him from eligibility should be disregarded as inconsistent with the intent of the law and that the merits of his application should be considered.

## III.  DEFERRAL OF PROCEEDINGS PENDING EXPUNGEMENT

Initially, we reject the respondent's contention that the Immigration Judge improperly denied his request for a continuance to seek expungement of his conviction. *Matter of Tinajero, supra*, imposes no mandate on the Immigration Judge. Instead, it merely noted the Service's policy to defer the institution of deportation proceedings in the case of aliens who are eligible to have a criminal conviction expunged and granted a Service motion to remand pursuant to that policy. We have consistently declined to review the Service's exercise of its prosecutorial discretion.  *See Lopez-Tellez v. INS*, 564 F.2d 1302 (9th Cir. 1977); *Matter of Torres*, 19 I&N Dec. 371 (BIA 1986),  and cases cited therein. In the present case, the Immigration Judge denied the respondent's motion for a continuance which had been opposed by the Service on the basis that the respondent's conviction was for a firearms violation, and thus, *Matter of Tinajero, supra*, was inapplicable. The decision to grant or deny a continuance is within the discretion of the Immigration Judge, if good cause is shown, and that decision will not be overturned on appeal unless it appears that the respondent was deprived of a full and fair hearing. *Matter of Perez-Andrade,* 19 I&N Dec. 433 (BIA 1987); 8 C.F.R. § 242.13 (1995). Moreover, inasmuch as the respondent's conviction for carrying a concealed weapon has apparently been expunged and we are remanding the record for further proceedings, as discussed below, no prejudice resulted from the Immigration Judge's denial of a continuance.

## IV.  EXPUNGEMENT OF A FIREARMS CONVICTION

We agree with the respondent that if his conviction has been expunged pursuant to section 1203.4 of the California Penal Code he is no longer deportable under section 241(a)(2)(C) of the Act as an alien convicted of a firearms violation. For many years this Board has recognized that a criminal conviction that has been expunged pursuant to section 1203.4 of the California Penal Code may not support an order of deportation. *See Matter of Ibarra-Obando,* 12 I&N Dec. 576 (BIA 1966; A.G. 1967);  *Matter of G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961), and cases cited therein. However, an exception to this rule exists for expunged drug convictions. The Attorney General has ruled that an alien convicted of a drug offense will be subject to deportation even if the conviction has been expunged. *See Matter of A-F-*, 8 I&N Dec. 429 (BIA, A.G. 1959).

In *Matter of A-F-, supra*, the Attorney General declined to follow the general rule regarding expungements pursuant to section 1203.4 of the California Penal Code and stated that Congress did not intend for aliens convicted of drug offenses to escape deportation on the basis of a state procedure authorizing a technical erasure of the conviction.  In doing so, the Attorney General created an exception to the line of cases by this Board ruling that a conviction

which has been expunged pursuant to this same California statute could not be made the basis for deportation proceedings because there was no longer a record of conviction. *See Matter of D-*, 7 I&N Dec. 670 (BIA 1958); *Matter of H-*, 6 I&N Dec. 619 (BIA 1955); *Matter of E-V-*, 5 I&N Dec. 194 (BIA 1953); *Matter of O-T-*, 4 I&N Dec. 265 (C.O. 1951). However, the Attorney General specifically limited this exception to drug offenses. *Matter of A-F-, supra,* at 445. Soon thereafter, this Board, and the Attorney General, again confronted the effect of expungement of a conviction under section 1203.4 of the Penal Code of California in a case that did not involve drugs. *Matter of G-, supra.* The Attorney General agreed with our conclusion that his ruling in *Matter of A-F-, supra*, should not be extended beyond drug cases. *Matter of G-, supra,* at 168.

The Immigration Judge in this case ruled that a firearms conviction resembled a drug conviction more than it resembled a conviction for a crime involving moral turpitude, and thus, expungement of such a conviction pursuant to section 1203.4 of the California Penal Code did not defeat deportability. Therefore, the Immigration Judge expanded the Attorney General's exception in *Matter of A-F-, supra*, to firearms violations in ruling that an alien whose firearms conviction has been expunged remains deportable on the basis of that conviction. Such a unilateral expansion of the rulings of the Attorney General and this Board is inconsistent with 8 C.F.R. § 3.1(g).

Accordingly, we conclude that both the Board and the Immigration Judge are bound by the Attorney General's rulings in *Matter of Ibarra-Obando, supra,* and *Matter of G-, supra*, which affirmed our precedent on nonnarcotic cases that expungement under section 1203.4 of the California Penal Code removes a criminal conviction as a basis for deportability. Since the respondent has submitted on appeal a copy of an order from a California criminal court, apparently setting aside his plea and dismissing the concealed weapon complaint pursuant to section 1203.4 of the California Penal Code, we will remand the record to the Immigration Judge for further proceedings in accordance with this decision.

**ORDER:** The motion to remand is granted. The record is remanded to the Immigration Judge pursuant to 8 C.F.R. § 3.1(d)(2) for further proceedings in accordance with this decision.

*CONCURRING OPINION:* Michael J. Heilman, Board Member, in which Lauri S. Filppu and Patricia A. Cole, Board Members, joined

I respectfully concur in the result reached in the majority opinion, but for different reasons.

The majority of the Board has decided not to request that the Attorney General reconsider what effect should be given to a conviction expunged pursuant to section 1203.4 of the California Penal Code for immigration purposes. In view of this decision, I reluctantly agree with the majority that we

are constrained to follow the Attorney General's ruling in *Matter of G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961), in this case.

As noted in the dissent, the expungement provisions of section 1203.4 have been significantly eroded, both by statutory amendment and judicial interpretation, since the time of the Attorney General's opinion in *Matter of G-*, *supra*. At present, expungement of a conviction under that statute will not relieve the convicted offender of the prohibition against possession of a concealed firearm, prevent the use of the conviction for purposes of subsequent prosecution, or avoid the denial or revocation of numerous business and professional licenses as a consequence of the conviction. As a result of this diminishment of its effect, section 1203.4 can no longer be regarded as a true expungement statute. This conclusion is supported by the statements of both the California state courts and the United States Court of Appeals for the Ninth Circuit in the caselaw cited by the dissent.

Furthermore, in light of the Board's decision in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), I believe that the question of the validity of a state expungement for immigration purposes should be reconsidered. In *Ozkok*, the Board found that the appropriate test for determining whether a conviction exists should revolve around the issues of establishment of guilt and imposition of punishment, rather than the state's characterization of its criminal procedures. In view of that standard, which the circuit courts have approved as proper for purposes of interpreting the federal immigration laws, I question whether expungement procedures, where guilt and punishment generally precede the rehabilitative process, are effective to eliminate the immigration consequences of an alien's conviction.

However, the Attorney General has ruled that expungement of a conviction under section 1203.4 of the California Penal Code is valid to remove the consequences of the offense for at least some types of crimes, i.e., those which involve moral turpitude. *Matter of G-, supra.* Although I acknowledge the force of the arguments presented in the dissent that neither that decision nor *Matter of A-F-*, 8 I&N Dec. 429 (BIA, A.G. 1959), is controlling, in my view the Board is bound by one or the other of these opinions of the Attorney General. Therefore, in the absence of agreement to certify the question of the continuing recognition of an expungement under California law to the Attorney General, I find that I am required to make a choice as to which case should be followed.

In *Matter of G-, supra*, the Attorney General stated that his holding in *Matter of A-F-, supra*, was limited and that in other than narcotics cases, he would continue his approval of the Board's previous rule recognizing expungements under section 1203.4 of the California Code. Although the question of firearms convictions was not before the Attorney General in either case, I accept the literal language of *Matter of G-* as the controlling authority on this issue, absent certification to the Attorney General.

In view of my opinion that section 1203.4 does not, in fact, expunge a conviction, I would request that the Attorney General reconsider the effect to be given an expunged conviction in immigration proceedings. Because the Board has chosen not to certify this decision to the Attorney General, however, I conclude for the reasons stated above that we are unable to deviate from the prior ruling. I therefore must concur in the result reached by the majority.

*CONCURRING AND DISSENTING OPINION:* David B. Holmes, Board Member; in which Mary Maguire Dunne, Vice Chairman, joined

I respectfully concur in part and dissent in part.

## I.

I concur in the majority's finding that the Immigration Judge did not err in denying the respondent's request for a continuance to seek an "expungement" of his firearms conviction under section 1203.4 of the California Penal Code. In my view, the Immigration Judge properly concluded that this case was not controlled by *Matter of Tinajero*, 17 I&N Dec. 424 (BIA 1980), which concerns the deferral of proceedings against aliens deportable under section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4) (1976). However, if I agreed with the majority's ultimate conclusion that the expungement of this respondent's firearms offense eliminated the basis for his deportability under section 241(a)(2)(C) of the Act, 8 U.S.C. § 1251(a)(2)(C) (1994), then there would seem to be strong arguments that the same policy considerations addressed in *Matter of Tinajero* would be equally applicable here. This is not an issue I need further address because I do not agree with the majority's principal holding in this case.

## II.

I join in Section I of Board Member Hurwitz' separate opinion and dissent from the majority's finding that an expungement of the respondent's firearms conviction under section 1203.4 of the California Penal Code would eliminate that conviction as the basis for a charge of deportability under section 241(a)(2)(C) of Act.

Both the majority and Board Member Heilman's concurring opinion in essence conclude that the Board's "hands are tied" regarding this issue by previous Attorney General decisions concerning the effect on deportability of "expungements" under section 1203.4 of the California Penal Code. The majority states that Immigration Judges and this Board "are bound by the Attorney General's rulings in *Matter of Ibarra-Obando*, [12 I&N Dec. 576 (BIA 1966; A.G. 1967)], and *Matter of G-*, [9 I&N Dec. 159 (BIA 1960; A.G.

1961)], which affirmed our precedent on nonnarcotic cases that expungement under section 1203.4 of the California Penal Code removes a criminal conviction as a basis for deportability."Board Member Heilman's concurring opinion states that the "literal language" of *Matter of G-, supra*, is "controlling authority" on the issue before us, absent certification to the Attorney General. I do not agree that the cited Attorney General decisions mandate the conclusion reached by the majority. In my view, these Attorney General decisions in fact support the exact opposite conclusion.

Administrative decisions addressing the effect in immigration proceedings of an "expungement" of a conviction under section 1203.4 of the California Penal Code have a long history dating back to at least 1943. *See Matter of O-T-*, 4 I&N Dec. 265, 266 (C.O. 1951). A review of the decisions entered during the intervening 53 years relating to the effect of "expungements" under this section of California law perhaps raise as many questions as they answer. However, two points relevant to the principal issue now before us seem clear.

First, the Attorney General has *not* ruled that the mere fact that a conviction is "expunged" under section 1203.4 of the California Penal Code results *as a matter of law* in there being no "conviction" whatever to support an order of deportation. To the contrary, the Attorney General ruled in *Matter of A-F-,* 8 I&N Dec. 429 (BIA, A.G. 1959), that a finding of deportability based upon conviction of a state narcotics offense was *not* affected by a "technical" expungement under section 1203.4. Thus, the Attorney General's continuing support after *Matter of A-F-, supra*, for the position that an alien, whose conviction for a crime involving moral turpitude is expunged, is not an alien "convicted" of a crime for the purposes of section 241(a)(4) of the Act necessarily implicated *policy* as well as legal considerations. Undoubtedly influential in this regard was the fact that this rule of the Board had been longstanding even in 1961 and there "had been no Congressional signpost pointing in the opposite direction." *Matter of G-, supra*, at 169; *see also Matter of Ibarra-Obando, supra*, at 589.

Secondly, the Attorney General has never addressed the effect on deportability *under section 241(a)(2)(C)* of the Act of an "expungement" of a firearms conviction. The precise issue addressed and resolved by the Attorney General in *Matter of G-, supra*, is clear. In his decision in that case, the Attorney General stated: "The issue to be decided here is whether an alien who has sustained a conviction which is later expunged under [section 1203.4] is an 'alien . . . who . . . is *convicted* of a crime . . .' *for the purposes of section 241(a)(4)* of the Immigration and Nationality Act." *Matter of G-, supra*, at 166 (second emphasis added). The resulting decision in *Matter of G-* discusses the issue solely in the context of questions of deportability under former sections 241(a)(4) and (11) of the Act, 8 U.S.C. §§ 1251(a)(4) and (11) (1958). Similarly, in *Matter of Ibarra-Obando, supra*, the Attorney General reaffirmed the "long-established administrative rule that a

non-narcotics conviction which has been expunged pursuant to such state procedure is not a 'conviction' *for the purpose of section 241(a)(4)* of the Immigration and Nationality Act." *Id.* at 588.

Thus, the Attorney General has ruled that the fact that there has been a "technical" expungement of a conviction under section 1203.4 of the California Penal Code does not in itself mandate a finding that the conviction cannot support *any* charge of deportability requiring a conviction. Rather, the effect of such an expungement on a charge of deportability involves both legal and policy considerations. And, the Attorney General has *not* addressed the effect of the expungement of a firearms conviction on a charge of deportability under section 241(a)(2)(C) of the Act.[2] Accordingly, I neither understand nor agree with the conclusion of the majority that the Attorney General has already resolved the principal issue before us in this case.

Further, for the reasons set forth in section I of Board Member Hurwitz' dissent, I would find a clear congressional "signpost" that aliens convicted of weapons offenses should not escape deportation because of a state procedure authorizing a "technical" erasure of the conviction. *See Matter of A-F-, supra*, at 445-46. This is particularly true in view of the fact that Congress has "progressively strengthened" the deportation laws dealing with aliens convicted of such offenses. *Id.* The rationale expressed by the Attorney General in *Matter of A-F-* supports a finding of deportability in this case. Accordingly, I would affirm the Immigration Judge's finding of deportability under section 241(a)(2)(C) of the Act.

## III.

I do not join in the remainder of Board Member Hurwitz' dissent because I do not find it necessary for the resolution of the issues before us and because the broader questions addressed therein have neither been raised nor briefed by the parties.

*DISSENTING OPINION:* Gerald S. Hurwitz, Board Member, in which Fred W. Vacca, Board Member, joined

I respectfully dissent.

The question now before the Board is whether an alien whose firearms conviction has been expunged pursuant to section 1203.4 of the California Penal Code is deportable on the basis of that conviction. For the following reasons, I would find that such an alien is deportable. I would also refer the question to the Attorney General for her consideration.

---

[2] The Attorney General similarly has not addressed the issue whether the "technical" expungement of an "aggravated felony" conviction would preclude a finding of deportability under section 241(a)(2)(A)(iii) of the Act.

## I. APPLICATION OF *MATTER OF A-F-* AND *MATTER OF G-* TO FIREARMS CONVICTIONS

A review of the earliest cases involving expungements reveals that the initial inquiry regarding deportability was whether a conviction remained final following its expungement under section 1203.4 of the California Penal Code. It was determined that an expungement, considered to be equivalent to a pardon, nullified the conviction, which would therefore not support a deportation order. *See Matter of S-R-*, 7 I&N Dec. 495 (BIA 1957); *Matter of H-*, 6 I&N Dec. 619 (BIA, A.G. 1955); *Matter of E-V-*, 5 I&N Dec. 194 (BIA 1953).

However, in *Matter of A-F-*, 8 I&N Dec. 429 (BIA, A.G. 1959), the Attorney General viewed the expungement of a narcotics conviction under section 1203.4 in a different light. He disagreed with the Board's conclusion that there is "no conviction whatever to support an order of deportation" following expungement of a drug offense, finding that Congress did not intend for aliens convicted of drug violations to escape deportation on the basis of a state expunction procedure, which authorized only a "technical erasure of the conviction." *Id.* at 445. He based his conclusion on the "continuing and serious federal concern" regarding the proliferation of drug traffic, noting that Congress had progressively strengthened the deportation laws dealing with drug offenders. *Id.* at 445-46. Thus, he determined that in the face of this "clear national policy," the term "convicted" was not "flexible enough to permit an alien to take advantage of a technical 'expungent' [sic] which is the product of a state procedure wherein the merits of the conviction and its validity have no place." *Id.* at 446.

The Attorney General further stated that Congress intended the inquiry into whether a conviction exists to "stop at the point at which it is ascertained that there has been a conviction in the normal sense in which the term is used in federal law." *Matter A-F-, supra*, at 446. Citing *Berman v. United States*, 302 U.S. 211 (1937), he indicated that the point of conviction is when the trial court imposes sentence, even if it has only placed the defendant on probation, which the Supreme Court had stated was "concerned with rehabilitation, not with the determination of guilt." *Id.* at 213. He therefore concluded that unless the conviction was reversed by the usual appellate process, it was immaterial that the record of conviction was cancelled by a state expunction procedure.

Subsequent to the decision in *Matter of A-F-*, however, the Attorney General again addressed the issue of expungements in *Matter of G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961). He stated there that his disagreement with the Board's analysis regarding the existence of a conviction following expungement was limited to narcotics cases. The Attorney General also relied on the Supreme Court's decision in *Pino v. Landon*, 349 U.S. 901 (1955), for two propositions. First, he concluded that *Pino* rejected the view

that a determination whether a conviction exists for immigration purposes is purely a "federal question." In addition, he stated that the procedure for setting aside a conviction under section 1203.4 of the California Penal Code moves it "farther away from an area of finality" than the Massachusetts "on file" procedure, which was considered to have insufficient finality to support an order of deportation in *Pino. Matter of G-, supra,* at 169. Thus, he concluded that an alien convicted of a crime involving moral turpitude that had been expunged under the California expunction statute did not have a "conviction" for immigration purposes.

There appear to be several areas of tension that arise from these two holdings of the Attorney General. The first deals with whether the effect to be given to a state expungement should be decided as a matter of law or policy. In *Matter of G-* and its predecessor decisions, the question seemed to be one of legal interpretation, whereas in *Matter of A-F-,* the Attorney General made a policy determination based on an assessment of congressional intent. Next, there is the question of finality of the conviction. According to *Matter of G-,* there was no finality following expungement because the finding of guilt was set aside. However, in *Matter of A-F-,* imposition of sentence and probation was considered the point of finality, absent appellate scrutiny, since the cancellation of a conviction by a procedure that had no regard for its merits was not deemed effective to prevent deportation. Finally, there is the issue of whether the existence of a conviction for immigration purposes should be determined according to federal or state law. The idea that the construction of the immigration laws was purely a federal question was rejected in *Matter of G-,* but in *Matter of A-F-,* the Attorney General declined to make the deportability of an alien dependent on "the vagaries of state law." *Matter of A-F-, supra,* at 446.

In view of the tensions between these two decisions, it is unclear whether the rationale of *Matter of G-* or *Matter of A-F-* should be applied in deciding the effect to be given to expungements of firearms convictions. Furthermore, although *Matter of G-* characterized the ruling in *Matter of A-F-* regarding narcotics expungements as a limited departure from the prior Board position that an expungement eliminates a conviction for immigration purposes, all previous published decisions on this point dealt exclusively with crimes involving moral turpitude. Therefore, the issue whether a firearms expungement is valid to prevent deportation was not, in fact, before the Attorney General in either case. *See Matter of G-, supra,* at 166-67 (noting that the issue presented was whether an alien was deportable under former section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1958), which related to crimes involving moral turpitude). Consequently, it appears to be an open question whether an expunged firearms conviction falls within the general rule espoused in *Matter of G-* or is a matter of such serious national concern as to merit an exception akin to that made for narcotics convictions in *Matter of A-F-.* For the following reasons, I find that firearms convictions

are comparable to drug violations and that the rationale of *Matter of A-F-* should govern.

Many years have passed since the decisions in *Matter of G-* and *Matter of A-F-* were rendered. In the meantime, Congress has made important revisions in the immigration laws regarding firearms violations. Prior to 1988, an alien was deportable for a firearms violation only if he was convicted of unlawfully possessing or carrying an automatic or semiautomatic weapon or a sawed-off shotgun. *See* former section 241(a)(14) of the Act, 8 U.S.C. § 1251(a)(14) (1982). The Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, expanded the list of weapons specified in the statute to include, in addition, any firearm or destructive device or any revolver. The statute was amended again by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978. With the passage of that law, the types of violations that render an alien deportable were greatly increased, and the list of weapons within the scope of the statute was replaced with one broad federal definition of a "firearm or destructive device." *See* section 241(a)(2)(C) of the Act; *see also* 18 U.S.C. § 921(a) (1994); *Matter of Chow,* 20 I&N Dec. 647 (BIA 1993), *aff'd*, 12 F.3d 34 (5th Cir. 1993). Furthermore, Congress has created a new classification of serious criminal offenses, namely aggravated felonies, which subject an alien to deportation and bar him from many forms of relief. Included in this category are illicit trafficking in firearms and several federal crimes relating to firearms offenses. *See* section 101(a)(43)(E) of the Act, 8 U.S.C. § 1101(a)(43)(E) (1994).[1]

At the time the decisions on expungement were rendered, the Attorney General did not address what effect an expungement under state law would have on a firearms conviction of an alien in immigration proceedings. In the interim Congress has significantly broadened the scope of the deportation provisions regarding firearms violations in response to national concerns about the increasing violent use of guns.[2] In view of these changes in the immigration laws, it is apparent that Congress considers firearms violations

---

[1] The Board has not yet determined if an expunged conviction for an aggravated felony will support a charge of deportability under section 241(a)(2)(A)(iii) of the Act. However, I note that Congress has shown its clear intent to deal strictly with aliens convicted of such a crime. For example, Congress mandated that aggravated felons should be subject to expedited deportation proceedings. Section 242A(a)(1) of the Act, 8 U.S.C. § 1252a(a)(1) (1994). In addition, severe limitations have been imposed on the discretionary relief available to aggravated felons. *See, e.g.,* section 244(e)(2) of the Act, 8 U.S.C. § 1254(e)(2) (1994)(voluntary departure); *Matter of Gomez-Giraldo*, 20 I&N Dec. 957 (BIA 1995) (waiver of inadmissibility); *Matter of D-*, 20 I&N Dec. 827 (BIA 1994) (asylum and withholding of deportation). I further note in this regard that Congress has progressively expanded the list of crimes considered to be aggravated felonies.

[2] I note also that there are no waivers permitting an alien to avoid deportability for a firearms conviction. Furthermore, a pardon, with which an expungement was formerly equated, does not eliminate deportability for either drug or firearms offenses. *See* section 241(a)(2)(A)(iv) of the Act.

to be a matter of serious concern to the welfare of this country. Therefore, I conclude that convictions for firearms offenses, which pose a threat to our nation comparable to that of drug violations, should not be eliminated for immigration purposes by expungement pursuant to a state statute. In support of this conclusion, I observe that the only circuit court to have addressed the issue decided that an expunged firearms conviction does not prevent a finding of deportability. *Gutierrez-Rubio v. INS,* 453 F.2d 1243 (5th Cir.), *cert. denied,* 408 U.S. 926 (1972).

## II. EROSION OF THE CALIFORNIA EXPUNGEMENT LAW

The purpose of expungement statutes is to mitigate the collateral effects of a conviction for purposes of rehabilitation. *See* Bryant H. Byrnes, *Expungement in California: Legislative Neglect and Judicial Abuse of the Statutory Mitigation of Felony Convictions,* 12 U.S.F. L. Rev. 155, 157 (1977). However, section 1203.4 of the California Penal Code currently contains so many exceptions that its actual rehabilitative effect is questionable. *Id.* at 158.

At the time of its inception, the California statute was intended to allow convicted defendants to avoid the permanent stigma of a conviction, but it was soon subject to erosion and narrow construction. *Id.* at 167-68. For example, in *Meyer v. Board of Medical Examiners*, 206 P.2d 1085, 1087 (Cal. 1949), the Supreme Court of California held that the legislature did not intend for an expungement to "obliterat[e] the fact that the defendant had been finally adjudged guilty of a crime" and concluded that a physician's license could therefore be suspended on the basis of an expunged conviction. The California legislature subsequently codified the court's ruling and added several other restrictive provisions. *See* Bryant H. Byrnes, *supra*, at 168-69. Thus, when the Attorney General rendered his decision in *Matter of G-, supra*, an expungement pursuant to the statute would not prevent the use of a conviction for purposes of a subsequent prosecution, the revocation of a driver's license, or the denial or revocation of several occupational and professional licenses, such as licenses to practice law and medicine or to teach in a public school. *See Matter of G-, supra*, at 166.

However, the scope of the California statute has been even further eroded since that time, both by legislation and judicial interpretation. For example, in *Matter of G-, supra*, the Attorney General specifically mentioned that an offender was relieved from prohibition against possession of a firearm by expungement under section 1203.4. As a result of a subsequent statutory amendment, however, individuals whose convictions have been expunged under that statute are no longer permitted to possess a concealable weapon. Cal. Penal Code § 1203.4(a) (1995).

The California Business and Professional Code also currently provides that a license regulated by that code may be denied on the basis of a conviction, irrespective of an order of expungement pursuant to section 1203.4. *See* Cal.

Bus. & Prof. Code § 480 (1995). Among the specific business and professional licenses that may be denied, revoked, or suspended as a result of a conviction, regardless of its expungement under section 1203.4, are those required of dentists, opticians, psychologists, accountants, guide dog trainers, barbers and cosmetologists, electronic and appliance repair dealers, real estate agents, and mineral, oil, and gas brokers. Cal. Bus. & Prof. Code §§ 1607.1, 2555.1, 2963, 5106, 7211.2, 7405, 9853, 10177, 10562 (1995).

California caselaw that was decided after *Matter of G-, supra*, also illustrates how the effectiveness of section 1203.4 has been further limited. In *Copeland v. Dept. of Alcoholic Bev. Control*, 50 Cal.Rptr. 452 (Cal. Dist. Ct. App. 1966), the revocation of a license to sell alcoholic beverages was upheld on the basis of an expunged conviction despite the absence of a specific statutory exemption. The court found that the penalties and disabilities released by section 1203.4 related only to criminal matters, not to proceedings to suspend or revoke business or professional licenses. *See also Ready v. Grady*, 52 Cal.Rptr. 303 (Cal. Dist. Ct. App. 1966) (upholding the revocation of an insurance agent's license). This proposition was more recently reiterated in *Adams v. County of Sacramento*, 1 Cal.Rptr.2d 138 (Cal. Ct. App. 1991), where the court concluded that preclusion from employment as a peace officer was not the kind of penalty or disability which was eliminated by expungement because the purpose of the preclusion was to protect the public rather than to punish the convicted felon.

The California courts have concluded that an expungement under section 1203.4 does not "eradicate a conviction or purge the defendant of the guilt established thereby." *Adams v. County of Sacramento, supra*, at 141; *see also Meyer v. Board of Medical Examiners, supra; In re Phillips,* 109 P.2d 344 (Cal. 1941). They have also determined that only criminal, rather than civil, penalties and disabilities are relieved by section 1203.4. *See, e.g., Adams v. County of Sacramento, supra*, and cases cited therein; *see also* Notes and Comments, *The Effect of Expungement on a Criminal Conviction*, 40 S. Cal. L. Rev. 127, 144 (1967). The California legislature has endorsed this view by passing numerous limitations on the scope of the statute. As a result, the impact of an expungement under section 1203.4 has been so diluted that it is no longer effective to remove the stigma of a conviction. [3] Bryant H. Byrnes,

[3] I note that the true rehabilitative measure of an expungement under California law has also been minimized by the expanded availability of the benefits of section 1203.4. Initially, relief under the statute was limited to felons who received and completed probation, which was only granted to first offenders, i.e., those who were most likely to be successfully reformed. *See* Bryant H. Byrnes, *supra*, at 171; Notes and Comments, *supra*, at 143. Under the current statute, expungement is available to any defendant who has fulfilled the conditions of probation or has been discharged prior to the termination of his probation, or "in any other case in which a court, in its discretion and the interests of justice" determines that relief should be granted. Cal. Penal Code § 1203.4 (West 1995). The effect of offering the rewards of section 1203.4 to all offenders has been to further devalue the significance of an expungement. *See* Bryant H. Byrnes, *supra*, at 171.

*supra*, at 171. I find it significant that California now refuses to recognize expungements under section 1203.4 as having any effect for so many purposes, and I question the validity of such expungements for immigration purposes. Finally, I note that the United States Court of Appeals for the Ninth Circuit has concurred that it is "sheer fiction to say that the conviction is 'wiped out' or 'expunged'" pursuant to the California statute. *Garcia-Gonzales v. INS,* 344 F.2d 804, 808 (9th Cir.), *cert. denied*, 382 U.S. 840 (1965).

## III. CHANGED INTERPRETATION OF THE TERM "CONVICTION" UNDER MATTER OF OZKOK

In *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), this Board reviewed the historical development of the question of what constitutes a final "conviction" for immigration purposes. We noted that the standards applied since the 1950s were no longer appropriate due to the numerous and varied state criminal procedures that had evolved in the meantime. Under these state laws, differing terminology was used to define a conviction and the multitude of procedures that had been created to ameliorate the consequences of a conviction. These variations in how the states characterized a "conviction" and our dependence on a state definition for immigration purposes had led to anomalous and unfair results. Thus, we noted that due to the differences in state penal laws, some aliens, who were clearly guilty of criminal misconduct and whom Congress intended to be considered "convicted," had been allowed to escape deportation, while others, guilty of the same offense, were deportable. We therefore found it necessary to create a new standard which would provide uniformity in the application of our federal laws, while implementing the will of Congress to deport aliens guilty of crime.[4]

In seeking to determine a fair standard, we considered the basic elements necessary for the consequences of a conviction to attach. We formulated a test under which a person was deemed convicted when guilt had been established and some punishment for the criminal conduct had been imposed, unless further proceedings were available to reassess the question of guilt or innocence. By looking to these essential, universal elements of a conviction rather than to each individual state's characterization of that term, we insured that aliens who had been treated by their respective states as though they had been convicted were considered to have been convicted for immigration purposes. In light of our decision in *Matter of Ozkok, supra*, I believe that a reexamination of our view of expungements is appropriate.

---

[4] Several of the circuit courts have given their specific approval to our reliance in *Matter of Ozkok, supra*, on the concepts of equal treatment and the propriety of a federal standard. *See Wilson v. INS*, 43 F.3d 211 (5th Cir.), *cert. denied*, 116 S. Ct. 59 (1995); *White v. INS*, 17 F.3d 475 (1st Cir. 1994); *Yanez-Popp v. United States INS*, 998 F.2d 231 (4th Cir. 1993); *Molina v. INS,* 981 F.2d 14 (1st Cir. 1992); *Chong v. INS*, 890 F.2d 284 (11th Cir. 1989).

The term "expungement" has been applied to a number of state rehabilitative procedures which have been called by a variety of names. *See, e.g.,* Idaho Code § 19-2604 (1994) (discharge of defendant); Mich. Comp. Laws Ann. § 780.621 (West 1994) (motion to set aside conviction); Minn. Stat. Ann. § 638.02 (West 1994) (pardon extraordinary); Nev. Rev. Stat. § 176.225 (1993) (honorable discharge from probation); N.Y. Correct. Law § 701 (McKinney 1994) (certificate of relief from disabilities); Ohio Rev. Code Ann. § 2953.32 (Baldwin 1995) (sealing of records of first offense); Or. Rev. Stat. § 137.225 (1994) (post-judgment procedures). Many of these procedures, including California's, do not, in fact, result in a true expungement of the conviction, but rather reward good behavior by releasing the defendant from certain penalties and disabilities following successful probation. *See Garcia-Gonzales v. INS, supra;* Notes and Comments, *supra*, at 132. As previously discussed, expungement in California under section 1203.4 is ineffective for numerous purposes. Many other states also permit the use of an "expunged" conviction to prove the fact of a prior conviction in subsequent criminal proceedings, to preclude possession of firearms, and to determine a person's qualifications for employment and licensing. *See, e.g.,* Kan. Stat. Ann. § 21-4619 (1993); Minn. Stat. Ann. § 638.02 (West 1994); Nev. Rev. Stat. § 176.225 (1993); N.Y. Correct. Law § 701 (McKinney 1994); Ohio Rev. Code Ann. § 2953.32 (Baldwin 1995); Wash. Rev. Code Ann. § 9.95.240 (West 1994).

Generally, before a conviction can be "expunged," the defendant must necessarily have pled guilty or nolo contendere or been found guilty of a crime. A sentence to confinement or probation must also have been completed, or probation terminated prior to completion. Therefore, the elements of guilt and punishment are both present, and there is nothing further required to render the conviction final.

I find it anomalous that a convicted alien, whose guilt of a criminal offense is unquestioned, who has been subjected to punishment, and whose expunged conviction still carries with it many of the consequences of a conviction under state law may be permitted to avoid deportation simply because the state chooses to reward his good behavior by releasing him from some of the penalties otherwise imposed on convicted persons. *See Gonzalez de Lara v. United States,* 439 F.2d 1316 (5th Cir. 1971); *Garcia-Gonzales v. INS, supra; Matter of A-F-, supra.* Applying the rationale of *Matter of Ozkok, supra,* I believe that such an alien should bear the immigration consequences of his conviction.

## IV.  PRINCIPLES OF FEDERALISM

In *Matter of A-F-, supra*, the Attorney General concluded that narcotics violators could not avoid deportation by means of a state procedure authorizing a technical erasure of the conviction because the deportability of an alien

should not be dependent upon the "vagaries of state law." *Id.* at 446. The Attorney General's opinion in *Matter of A-F-* was noted with specific approval by the United States Courts of Appeals for the First and Ninth Circuits. *See Kolios v. INS,* 532 F.2d 786 (1st Cir.), *cert. denied*, 429 U.S. 884 (1976); *Kelly v. INS,* 349 F.2d 473 (9th Cir.), *cert. denied,* 382 U.S. 932 (1965); *Garcia-Gonzales v. INS, supra*. In *Gonzalez de Lara v. United States, supra*, the Fifth Circuit also agreed that a state expungement procedure was not effective to eliminate a drug conviction for immigration purposes, noting that the manner in which a state deals with a person after his conviction is not controlling in a deportation proceeding, which is a matter of federal rather than state law. In reaching this conclusion, the court relied on the rationale of the Ninth Circuit in *de la Cruz-Martinez v. INS*, 404 F.2d 1198 (9th Cir. 1968), *cert. denied*, 394 U.S. 955 (1969), where the court stated:

> Deportation is a function of federal and not of state law. In the context of a narcotics conviction, deportation is a punishment independent from any that may or may not be imposed by the states. While it is true that the same event, the state conviction, triggers both sets of consequences, *it would be anomalous for a federal action based on a state conviction to be controlled by how the state chooses to subsequently treat the event. It is the fact of state conviction, not the manner of state punishment for conviction, that is crucial.*

*Id.* at 1200 (emphasis added).

Other circuit courts have also adopted the principle that Congress intended the determination whether an alien has been "convicted" for immigration purposes to be made pursuant to federal law and policies rather than pursuant to the various procedures prescribed by state law. *See Yanez-Popp v. United States INS*, 998 F.2d 231 (4th Cir. 1993); *Chong v. INS*, 890 F.2d 284 (11th Cir. 1989); *Aguilera-Enriquez v. INS*, 516 F.2d 565 (6th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976); *Will v. INS*, 447 F.2d 529 (7th Cir. 1971); *see also Rehman v. INS*, 544 F.2d 71 (2d Cir. 1976) (noting that construction of a term in immigration statutes is an issue of federal law, yet holding that enforcement of federal deportation laws would not be undermined by recognition of state policy similar to federal leniency policies). *See generally Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983) (holding that the determination whether a conviction exists for purposes of federal gun control laws is a question of federal, not state law, despite the fact that the predicate offense and its punishment are defined by state law).[5] This

---

[5] I note that Congress expressed its disagreement with the Supreme Court's decision in *Dickerson* by amending the gun control statute to provide that a conviction should be defined in accordance with the laws where the criminal proceedings are held. *See* Firearm Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986). However, *Dickerson* has still been relied on by the circuit courts for the general proposition that federal law governs the application of congressional statutes in the absence of plain language to the contrary. *See Yanez-Popp v. United States INS, supra,* at 236, and cases cited therein. The Fourth Circuit stated in *Yanez-Popp* that by overruling *Dickerson*, Congress merely provided the contrary indication that state, not federal law, applies in interpreting the federal gun control statute. The

principle, that federal law is controlling in the interpretation of the immigration laws, has also been recently reaffirmed by the First, Fifth, and Ninth Circuits. *Wilson v. INS*, 43 F.3d 211 (5th Cir.), *cert. denied*, 116 S. Ct. 59 (1995); *Paredes-Urrestarazu v. United States INS*, 36 F.3d 801 (9th Cir. 1994); *Molina v. INS*, 981 F.2d 14 (1st Cir. 1992); *Yazdchi v. INS*, 878 F.2d 166 (5th Cir.), *cert. denied*, 493 U.S. 978 (1989).

In regard to the specific issue now before us, the Fifth Circuit has affirmed a decision of this Board in which we concluded that the finality of a firearms conviction was not vitiated for deportation purposes by an expungement pursuant to Texas law. *Gutierrez-Rubio v. INS, supra*. Citing its prior opinion in *Gonzalez de Lara v. United States, supra,* the court rejected the alien's argument that its holding in the previous case, i.e., that an expunged conviction is not eliminated as a ground for deportation, should be limited to narcotics violations. Instead, the court stated that it had previously relied on the "principles of federalism," which it found were "in no way bounded by the nature of the offense involved." *Gutierrez-Rubio v. INS, supra,* at 1244. Thus the Fifth Circuit concluded that "[t]he manner in which Texas chooses to deal with a party subsequent to his conviction is simply not of controlling importance insofar as a deportation proceeding—a function of federal, not state, law—is concerned." *Id*. at 1244 (quoting *Gonzalez de Lara v. United States, supra,* at 1318).

In cases involving matters other than immigration law, the Fifth Circuit has relied on this principle of federalism to find that federal law controls the definition of the term "conviction." Thus, in *United States v. Gray*, 692 F.2d 352 (5th Cir. 1982), the court held that federal firearm provisions, which are keyed to the fact of a state conviction, are independent of state law procedures for vacating a conviction upon completion of probation. *See also United States v. Lehmann,* 613 F.2d 130 (5th Cir. 1980) (rejecting the assertion that no prior conviction existed for a federal firearms violation because the conviction was not considered final under Texas law); *United States v. Padia,* 584 F.2d 85 (5th Cir. 1978) (refusing to recognize the effect of a state expungement, with reliance on *Gonzalez de Lara* for the proposition that state action subsequent to a conviction is not controlling where federal gun control law is concerned).

Similarly, the Ninth Circuit has clearly expressed its view that federal statutes were intended to have uniform application and should not be made to depend on the variations in state law. *See, e.g., United States v. Bergeman,* 592 F.2d 533 (9th Cir. 1979) (holding that a state expungement does not change the status of a person as a convicted felon for purposes of federal gun control law); *Hyland v. Fukuda*, 580 F.2d 977 (9th Cir. 1978) (finding that a

---

court noted, moreover, that Congress had not overruled the Board's decision in *Matter of Ozkok, supra,* which held that for immigration purposes, federal law should be used to define the term "conviction." *See also Wilson v. INS, supra; Molina v. INS, supra.*

state exception from gun laws regarding the legality of an act has no impact on federal prohibition of the same act); *Burr v. INS*, 350 F.2d 87 (9th Cir. 1965) (finding that federal deportation statute does not depend on the nuances of state expungement), *cert. denied*, 383 U.S. 915 (1966); *Gutierrez v. INS,* 323 F.2d 593 (9th Cir. 1963) (noting that Congress intended to do its own defining in finding a state conviction final for immigration purposes), *cert. denied,* 377 U.S. 910 (1964); *Adams v. United States*, 299 F.2d 327 (9th Cir. 1962) (holding that uniform application of federal law precludes excusing a person whose narcotics conviction was expunged from the federal registration requirement for international travel); *see also United States v. Potts*, 528 F.2d 883, 887 (9th Cir. 1975) (concluding that Congress chose to consider state expungement statutes "irrelevant" to the interpretation of a federal firearms statute in agreeing with the majority opinion that an expunged conviction could be used to obtain a subsequent conviction under federal law) (Sneed, J. concurring).

Thus, in *Burr v. INS, supra*, the Ninth Circuit rejected an alien's assertion that the expungement under California law of his conviction for a crime involving moral turpitude would eliminate it for deportation purposes. According to the court, the rationale stated in previous narcotics cases regarding Congress' intent to have uniform application of federal laws was equally applicable where the deportation was based on a crime involving moral turpitude. *See Kelly v. INS, supra; Garcia-Gonzales v. INS, supra*. This holding was subsequently reiterated in *Ocon-Perez v. INS*, 550 F.2d 1153 (9th Cir. 1977), where the court stated that the alien's convictions for crimes involving moral turpitude would retain their vitality for deportation purposes even if they were expunged.

This pattern of decisions, which indicates that federal issues should be adjudicated in a uniform manner, lends considerable weight to the position that state expunction provisions are ineffective to vitiate a conviction for federal immigration purposes.

## V. CONCLUSIONS

The decisions in *Matter of G-, supra,* and *Matter of A-F-, supra*, addressed only the effect of expungement of a conviction for crimes involving moral turpitude and drug violations. The Attorney General has not determined the issue of expungement of firearms convictions. I therefore do not agree with the majority that we are bound by *Matter of G-* in deciding the effect of an expunged firearms conviction.

Moreover, many changes have occurred since the Attorney General's decisions in *Matter of G-* and *Matter of A-F-*. Not only has Congress revised the immigration laws on firearms violations, but the California expungement statute on which the Attorney General's opinions were based has been significantly weakened in its effect. Furthermore, our own interpretation of what

constitutes a final conviction for immigration purposes has been amended. Finally, the courts have given their approval to the Attorney General's reasoning in *Matter of A-F* that the federal question of deportability should not be controlled by the "vagaries of state law" and that Congress did not intend for an alien to avoid deportation on the basis of a state expunction procedure. *Matter of A-F-, supra*, at 446.

In view of the strict treatment of Congress toward aliens who commit firearms offenses, I would find that an expunged firearms conviction is not eliminated for immigration purposes. Furthermore, I conclude that the effect of the procedure under section 1203.4 of the California Penal Code on the status of a convicted person has become so diluted that an expungement under that statute is not effective to eliminate an alien's conviction for immigration purposes. Finally, in view of the position of this Board and the circuit courts on the question of whether a state action constitutes a conviction for immigration purposes, I believe it is appropriate for the Attorney General to reconsider the effect of all state expungements on convictions for immigration purposes.

Accordingly, I would dismiss the appeal and refer the issue to the Attorney General for reconsideration of *Matter of G-, supra,* and *Matter of A-F-, supra.*