# In re Mauro ROLDAN-Santoyo, Respondent

## File A90 286 629 - Boise

*Decided March 3, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under the statutory definition of "conviction" provided at section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996), no effect is to be given in immigration proceedings to a state action which purports to expunge, dismiss, cancel, vacate, discharge, or otherwise remove a guilty plea or other record of guilt or conviction by operation of a state rehabilitative statute.

(2) With the enactment of the federal statute defining "conviction" with respect to an alien, our decisions in *Matter of G-*, 9 I&N Dec. 159 (BIA 1960, A.G. 1961); *Matter of Ibarra-Obando*, 12 I&N Dec. 576 (BIA 1966, A.G. 1967); *Matter of Luviano*, 21 I&N Dec. 235 (BIA 1996), and others which address the impact of state rehabilitative actions on whether an alien is "convicted" for immigration purposes are no longer controlling.

(3) Once an alien is subject to a "conviction" as that term is defined at section 101(a)(48)(A) of the Act, the alien remains convicted for immigration purposes notwithstanding a subsequent state action purporting to erase the original determination of guilt through a rehabilitative procedure.

(4) The policy exception in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), which accorded federal first offender treatment to certain drug offenders who had received state rehabilitative treatment is superseded by the enactment of section 101(a)(48)(A), which gives no effect to state rehabilitative actions in immigration proceedings. *Matter of Manrique, supra*, superseded.

(5) An alien, who has had his guilty plea to the offense of possession of a controlled substance vacated and his case dismissed upon termination of his probation pursuant to section 19-2604(1) of the Idaho Code, is considered to have a conviction for immigration purposes.

Ernest A. Hoidal, Esquire, Boise, Idaho, for the respondent

Ann M. Tanke, District Counsel, for the Immigration and Naturalization Service

Before:   Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HUR-WITZ, FILPPU, COLE, MATHON, JONES, GRANT, and SCIALABBA,  Board Members. Concurring and Dissenting Opinion: VILLAGELIU, Board Member,

joined by SCHMIDT, Chairman; ROSENBERG and GUENDELSBERGER, Board Members. Dissenting Opinion: ROSENBERG, Board Member.

HEILMAN, Board Member:

We have jurisdiction over this timely appeal pursuant to 8 C.F.R. § 3.1(b) (1998). The request for oral argument before this Board is denied. 8 C.F.R. § 3.1(e). In an oral decision dated April 27, 1995, the Immigration Judge found the respondent deportable under section 241(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(B)(i) (1994),[1] based on his conviction for a controlled substance violation.[1] Additionally, the Immigration Judge determined that the respondent was ineligible to apply for relief from deportation under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), because he had not demonstrated lawful unrelinquished domicile of 7 consecutive years. On appeal the respondent contests his deportability and, alternatively, his ineligibility for section 212(c) relief. During the pendency of this appeal there have been significant changes in the law regarding both what constitutes a conviction for immigration purposes, and the availability of a section 212(c) waiver for aliens convicted of controlled substance violations. We will separately address these changes below and will dismiss the appeal.

## I. ISSUE PRESENTED

The issue before us is whether the respondent, a first offender whose guilty plea was vacated and whose case was dismissed upon the termination of his probation pursuant to an Idaho rehabilitative statute, remains convicted for immigration purposes in light of our decision in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), and the subsequent passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 (enacted Sept. 30, 1996) ("IIRIRA"), in which Congress provided a statutory definition for the term "conviction" for immigration purposes.[2]

## II. FACTUAL BACKGROUND

On November 29, 1993, the 27-year-old respondent, a native and citizen of Mexico, pleaded guilty to possession of more than 3 ounces of a con-

---

[1]Section 241(a)(2)(B)(i) has been redesignated as section 237(a)(2)(B)(i) of the Act, 8 U.S.C. § 1227(a)(2)(B)(i) (Supp. II 1996), without substantive change.

[2]*See* IIRIRA § 322, 110 Stat. at 3009-628 (codified at 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996)).

trolled substance, marijuana, which was a felony violation of section 37-2732(e) of the Idaho Code. On January 10, 1994, the District Court of the Sixth Judicial District of the State of Idaho, in and for the County of Bannock, withheld adjudication of judgment, sentenced him to 3 years' probation and imposed several monetary penalties. The terms of his probation included restrictions forbidding the respondent to use alcohol or to associate with any individuals not approved by the probation officer. The respondent was also subject to search of his residence, vehicles, and person at his probation officer's request. Finally, the court ordered that the respondent serve 90 days' confinement at the discretion of the probation officer. Deportation proceedings based on this offense were commenced on March 28, 1994.

While in deportation proceedings before the Immigration Court, the respondent filed a motion in the Idaho state court for early release from probation and dismissal of the charge in accordance with the withheld judgment. On September 6, 1994, the respondent's motion was granted. Subsequently, the court granted the respondent's March 6, 1995, motion requesting that his guilty plea be vacated pursuant to section 19-2604(1) of the Idaho Code.[3] The respondent argued before the Immigration Judge that because the Idaho state court's actions rendered him no longer convicted of the original charge, he was not deportable under section 241(a)(2)(B)(i) of the Act. In his April 27, 1995, oral decision, the Immigration Judge found that all three prongs of the definition for conviction enunciated in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), had been met and found the respondent deportable based on his original plea of guilt to a controlled substance violation notwithstanding the Idaho court's subsequent action vacating that plea. This appeal followed.

### III. THE EVOLUTION OF THE DEFINITION OF "CONVICTION" FOR IMMIGRATION PURPOSES

Until Congress enacted section 322 of the IIRIRA, the definition of "conviction" for immigration purposes had been a fluid one. In the absence

---

[3] Section 19-2604(1) of the Idaho Code, entitled "Discharge of defendant—Amendment of judgment," provides:

> If sentence has been imposed but suspended, or if sentence has been withheld, upon application of the defendant and upon satisfactory showing that the defendant has at all times complied with the terms and conditions upon which he was placed on probation, the court may, if convinced by the showing made that there is no longer cause for continuing the period of probation, and if it be compatible with the public interest, terminate the sentence or set aside the plea of guilty or conviction of the defendant . . . . The final dismissal of the case as herein provided shall have the effect of restoring the defendant to his civil rights.

of a statutory definition, this Board, with direction from the Supreme Court and the Attorney General, struggled for more than 50 years to reconcile its definition with the increasing numbers of state statutes providing ameliorative procedures affecting the "finality" of a conviction under state law. *See, e.g., Pino v. Landon*, 349 U.S. 901 (1955); *Matter of Ozkok, supra; Matter of G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961); *Matter of A-F-*, 8 I&N Dec. 429 (BIA, A.G. 1959); *Matter of L-R-*, 8 I&N Dec. 269 (BIA 1959); *Matter of O-*, 7 I&N Dec. 539 (BIA 1957); *Matter of F-*, 1 I&N Dec. 343, 348 (BIA 1942).

By the time of our decision in *Matter of Ozkok*, *supra*, we recognized that most states had adopted one or more methods of mitigating the consequences of a conviction, and that these methods differed from one another in name and breadth.[4] Some state statutes accord rehabilitative treatment only to first offenders and/or youth offenders and may further restrict such treatment to those individuals determined to be guilty of specified categories of offenses. Others offer rehabilitative relief to any defendant who is able to successfully complete a probationary period, without restriction on the nature of the offense. These rehabilitative measures may be implemented either before or after an entry of judgment.

For example, some state statutes provide for an initial adjudication of guilt upon a finding, admission, or noncontesting of guilt, but contain procedures variously termed as the setting aside, annulling, vacating, cancellation, or expungement of the original adjudication of guilt, which remove subsequent state consequences for the misconduct upon satisfactory completion of a probationary period. There are also differences regarding whether or not such an erasure is "automatic" or must be applied for, with a grant being a matter of the court's discretion. Among these state statutes there are further variances regarding the completeness of the erasure. Generally, the original judgment retains its vitality for at least some purpose, despite broad language in some ameliorative statutes suggesting otherwise.[5]

---

[4]*See, e.g.,* Cal. Penal Code § 1203.4 (1995) (expungement); Mich. Comp. Laws Ann. § 780.621 (West 1994) (motion to set aside conviction); Minn. Stat. Ann. § 638.02 (pardon extraordinary); Nev. Rev. Stat. § 176.225 (1993) (honorable discharge from probation); N.Y. Correct. Law § 701 (McKinney 1994) (certificate of relief from disabilities); Ohio Rev. Code Ann. § 2953.32 (Baldwin 1995) (sealing of records of first offense); Or. Rev. Stat. § 137.225 (1994) (post-judgment procedures); Va. Code Ann. § 18.2-251 (Michie 1997) (discharge and dismissal); Wisc. Stat. § 961.47 (1995) (discharge and dismissal); *see also Matter of Ozkok, supra*, at 550, and cases cited therein.

[5]For example, the Idaho statute under which this respondent's case was finally dismissed provides for full restoration of civil rights, but the state may, in some circumstances, use evidence of the "conviction" in applying an enhanced penalty statute. *See, e.g., Idaho v. Deitz,* 819 P.2d 1155 (Idaho Ct. App. 1991) (holding that an Idaho expungement will not be applied to defeat the enhanced penalty statutes in a case where the original guilty plea was not specifically set aside). *But see Manners v. Idaho Bd. of Vet. Med.,* 694 P.2d 1298 (Idaho 1985) (holding that a felony conviction which has been vacated and the charge dismissed cannot be the basis for revocation of a veterinary license).

Other states have implemented the same rehabilitative policy objectives by enacting statutes which simply defer or withhold adjudication of guilt, allowing for a final dismissal or discharge of proceedings upon satisfaction of the terms of probation. In effect, rather than providing measures which would "erase" a conviction, these statutes provide that a judgment is not to be entered in the first instance so long as the transgressor fully complies with the conditions set by the state court. Despite there never having been a conviction as far as these states are concerned, some states further provide for "expungement" of the records relating to the original charge.

Out of concern that a more uniform approach was needed for determining what will constitute a conviction for immigration purposes, we concluded in *Matter of Ozkok*, *supra,* that the time had come for us to revise the definition we had crafted in *Matter of L-R-, supra*, which required that the state action be considered a conviction by the state for at least some purpose. In so doing, we noted a long-standing rule that the determination of whether or not a conviction exists for immigration purposes is a question of federal law and is not dependent on the vagaries of state law. *Matter of Ozkok, supra,* at 551 n.6.

In *Ozkok*, we stated that we found no rational or legal reason to attach different immigration consequences to the same criminal conduct because of differences in the state law. As we discussed in *Ozkok*, under our definition in *Matter of L-R-*, an alien could escape the immigration consequences of his or her criminal misconduct, despite a plea or finding of guilt and the actual imposition of punishment, if the alien was prosecuted in a state where the rehabilitative statute provided for the deferral of entry of judgment subject to successful completion of probation. By way of contrast, an alien who committed the same offense in a state where the statute provided for the entry of judgment upon the plea or finding of guilt, but deferred the imposition of any punishment conditioned on compliance with the terms of probation, would be considered convicted for immigration purposes if the state considered him or her convicted for some purpose. Accordingly, we revised our definition of conviction to avoid these anomalous and unfair results.

The definition we adopted in *Matter of Ozkok*, *supra*, at 551-52, provided that, in cases where adjudication of guilt was withheld, an alien was considered convicted for immigration purposes when:

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

(2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and

516

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

Some circuit courts of appeals specifically approved *Ozkok's* federal approach to defining when an alien stands convicted for immigration purposes. *See, e.g., Wilson v. INS*, 43 F.3d 211 (5th Cir.), *cert. denied*, 516 U.S. 811 (1995); *Yanez-Popp v. INS*, 998 F.2d 231 (4th Cir. 1993); *Molina v. INS*, 981 F.2d 14 (1st Cir. 1992); *Chong v. INS*, 890 F.2d 284 (11th Cir. 1989). Nonetheless, questions remained. Despite our quest for a definition that would achieve uniform results, in states providing for deferral or withholding of adjudication of guilt, we were still obliged under the *Ozkok* definition to examine the individual state's statute to determine the nature of any proceedings that may be convened, if the alien did not conform with the conditions of his probation. Therefore, how the state set up its ameliorative statute still determined to some extent whether aliens who had committed the same criminal misconduct were considered "convicted" for immigration purposes. *See generally Martinez-Montoya v. INS*, 904 F.2d 1018 (5th Cir. 1990). For example, an alien, whose guilt was established in a state where the proceedings, convened upon a possible probation violation, addressed only whether probation should be revoked and what sentence should be imposed, would be considered convicted under the *Ozkok* definition, and thus subject to deportation. *See Matter of Chairez*, 21 I&N Dec. 44 (BIA 1995). However, an alien who had pleaded guilty to the same offense, but in a state where these proceedings addressed his guilt or innocence of the original charge, would escape immigration consequences stemming from his admitted guilt. Additionally, issues have remained unresolved regarding the application of the definition in cases, such as the one before us, where the alien has already complied with the terms of his probation and has successfully had his guilty plea vacated and proceedings finally dismissed. *See, e.g., Wilson v. INS, supra* (finding that the *Ozkok* definition had been satisfied where the alien had satisfactorily completed and been discharged from probation, his indictment had been dismissed, and the judgment of conviction had been set aside).

Congress decided that the *Ozkok* definition did not go far enough toward achieving a uniform federal approach and, with the passage of the IIRIRA, provided a statutory definition for the term "conviction," to be applied to aliens in immigration proceedings. Section 322(c) of the IIRIRA states that the definition applies "to convictions and sentences entered before, on, or after the date of the enactment" of the Act. IIRIRA § 322(c), 110 Stat. at 3009-629. Consequently, the new definition, in section 101(a)(48) of the Act, is applicable to the respondent's conviction. *See Matter of Punu*, 22 I&N Dec. 224 (BIA 1998).

Section 101(a)(48)(A) of the Act states:

The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

In the new definition, Congress definitively excised the third prong of *Ozkok*, eliminating the need to refer to the vagaries of the states' ameliorative statutes in order to determine if an alien has been convicted. The legislative history of section 322 of the IIRIRA underscores the breadth of the new definition:

Ozkok . . . does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior. . . . In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases, the third prong of the Ozkok definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes. *This new provision*, by removing the third prong of Ozkok, *clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.*

*See* H.R. Conf. Rep. No. 104-828, at 224 (1996) ("Joint Explanatory Statement") (emphasis added). Thus, it is clear that Congress intends that an alien be considered convicted, based on an initial finding or admission of guilt coupled with the imposition of some punishment, even in a state where further proceedings relating to the alien's actual guilt or innocence may be required upon his violation of probation in order for him to be considered convicted under the state law. *See Matter of Punu, supra.* Both the language of the statute and its legislative history implicitly recognize that the term "conviction" may have a different meaning for an alien from that which it has for others.

It cannot be disputed that this respondent, for whom judgment was withheld, but who pleaded guilty and was ordered by the judge to be punished for his offense, was convicted under the statutory definition. It is equally clear that at any point during his probationary period the respondent would have been considered convicted for immigration purposes. The question that remains to be answered, however, is whether Congress intends to give effect in immigration proceedings to a state's rehabilitative action which technically erases the record of what would otherwise be considered a "conviction" under section 101(a)(48) of the Act. The situation presented

here is similar to that addressed in *Matter of Nolan*, 19 I&N Dec. 539 (BIA 1988), where a respondent argued that a "pardon," which was automatically granted to him by operation of Louisiana law upon the successful completion of his sentence, exempted his conviction for a crime of moral turpitude from serving as a basis of deportability. In that case, we disagreed with the respondent's contention that the "pardon" he received satisfied the requirements for a gubernatorial or Presidential pardon under what was then section 241(b)(1) of the Act, 8 U.S.C. § 1251(b)(1) (1982), and is now found in section 237(a)(2)(A)(v) of the Act, 8 U.S.C. § 1227(a)(2)(A)(v) (Supp. II 1996).[6] *Matter of Nolan* is illustrative of the inconsistent immigration consequences that may result when state rehabilitative actions are examined to determine if an alien remains convicted for immigration purposes. If the State of Louisiana had called its rehabilitative action an "expungement" as opposed to a "pardon," or if the respondent had argued that his "pardon" was the equivalent of an "expungement," he may have been found to no longer have a conviction which would support his deportability.

## IV. REEXAMINATION OF OUR TREATMENT OF STATE EXPUNGEMENTS IN LIGHT OF THE NEW DEFINITION

Throughout the decades of struggling with the increasing numbers of state rehabilitative statutes and their varying methods of avoiding the state consequences of a conviction by either deferring or erasing the recording of judgment, aliens have generally been allowed to escape immigration consequences for their criminal misconduct once the conviction has been "expunged." Because of the semantic differences among the various states' methods for erasing criminal records, aliens have also not been considered convicted for immigration purposes where the state's action has been deemed "tantamount" to an expungement. The general rule has remained that a criminal conviction that has been expunged will not support an order of deportation. *See Matter of Luviano*, 21 I&N Dec. 235 (BIA 1996); *Matter of Ibarra-Obando,* 12 I&N Dec. 576 (BIA 1966; A.G. 1967); *Matter of G-, supra,* and cases cited therein.

In *Matter of A-F-*, *supra*, the Attorney General departed from what was already long-standing Board precedent and ruled that a conviction for a drug offense will render an alien deportable, notwithstanding the expunge-

---

[6]We note that section 237(a)(2)(B) of the Act does not provide a similar waiver of deportability for an alien who has been granted a full and unconditional Presidential or gubernatorial pardon for a conviction for a controlled substance violation.

ment of that conviction under a state rehabilitative statute. The Attorney General's reasoning in *Matter of A-F-* was that an alien's deportability should not be controlled by the "vagaries of state law." *Id.* at 446. The Attorney General stated:

> I do not believe that the term "convicted" may be regarded as flexible enough to permit an alien to take advantage of a technical "expungent"[sic] which is the product of a state procedure wherein the merits of the conviction and its validity have no place. I believe that Congress intended the inquiry to stop at the point at which it is ascertained that there has been a conviction in the normal sense in which the term is used in Federal law.

*Id.* The Attorney General expressly limited his ruling in *Matter of A-F-* to narcotics convictions. Shortly thereafter, the Attorney General in *Matter of G-, supra*, declined to extend the rule of *Matter of A-F-* to nonnarcotics cases, citing the absence of a congressional signpost pointing in the opposite direction. Accordingly, we have continued to apply *Matter of G-, supra*, as the controlling precedent in nonnarcotics cases. *See Matter of Luviano, supra; Matter of Ibarra-Obando, supra.*

Although the case before us concerns a narcotics "conviction," the expungement of which would not have defeated deportability under the rule of *Matter of A-F-*, the matter does not end there. In the intervening years, "exceptions" to the treatment of expunged drug convictions under the rule of *Matter of A-F-* have been administratively and judicially created. As we will discuss at greater length below, our decision in *Matter of Manrique, supra*, created such an exception for a first offender, such as this respondent, whose offense was for simple possession of a controlled substance, and who was the beneficiary of a state rehabilitative statute. To determine the continued viability of *Matter of Manrique*, we find it necessary to reconsider first, in light of the new definition at section 101(a)(48) of the Act, the effect to be given to any state action, whether it is called setting aside, annulling, vacating, cancellation, expungement, dismissal, discharge, etc., of the conviction, proceedings, sentence, charge, or plea, that purports to erase the record of guilt of an offense pursuant to a state rehabilitative statute. We note that even before the passage of the IIRIRA, some members of this Board felt that reconsideration of the effect to be given to all state expungements in immigration proceedings was warranted. *See Matter of Luviano, supra* (Heilman, concurring, joined by Filppu and Cole; Hurwitz, dissenting, joined by Vacca).

In the wake of the IIRIRA, this examination can no longer be postponed. The body of case law and administrative rulings that sought to balance various policy interests and provide a uniform rule for when an alien is considered convicted for immigration purposes has now been superseded by Congress' enactment of the statutory definition set forth in section 101(a)(48)(A) of the Act. Now that Congress has spoken on the matter of

what constitutes a conviction for immigration purposes, we must interpret the statutory definition in such a way that we give effect to the clearly expressed intent of Congress. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In doing so, we "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). To ensure that our interpretation is consistent with congressional intent, it is appropriate for us to further examine the legislative history of the statutory definition. *See Matter of Punu, supra*.

The Joint Explanatory Statement clarifies Congress' intent that, under the new definition, an alien is considered convicted upon "the original finding or confession of guilt" *even* in a state where further proceedings addressing the alien's guilt or innocence of the original charge would be required before the state would consider him convicted. Joint Explanatory Statement, *supra*, at 224. We thus have a clear indication that Congress intends that the determination of whether an alien is convicted for immigration purposes be fixed at the time of the original determination of guilt, coupled with the imposition of some punishment. Under the statutory definition, an alien for whom entry of judgment has been deferred may be found convicted for immigration purposes despite the fact that the state in which his proceedings were held has never considered him convicted. It simply would defy logic for us, in a case concerning a conviction in a state which effects rehabilitation through the technical erasure of the record of conviction, to provide greater deference to that state's determination that a conviction no longer exists. Under either scenario, the state has decided that it does not consider the individual convicted based on the application of a rehabilitative statute.

We find that the language of the statutory definition and its legislative history provide clear direction that this Board and the federal courts are not to look to the various state rehabilitative statutes to determine whether a conviction exists for immigration purposes. Congress clearly does not intend that there be different immigration consequences accorded to criminals fortunate enough to violate the law in a state where rehabilitation is achieved through the expungement of records evidencing what would otherwise be considered a conviction under section 101(a)(48)(A), rather than in a state where the procedure achieves the same objective simply through deferral of judgment.

It could be argued that, as the third prong of *Ozkok* dealt only with the nature of state procedures convened upon a violation of probation, Congress' elimination of that prong has no bearing on the effectiveness of an expungement for immigration purposes. However, such an approach would ignore the clear message from Congress that the "original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of

the immigration laws."[7]  Joint Explanatory Statement, *supra*, at 224. By providing a legislative definition applicable to all aliens regardless of the jurisdiction in which they have been charged, Congress has approved the federal approach taken in *Ozkok*, but has gone even further than *Ozkok* by eliminating the one prong of our former definition which required an examination of how a specific state structured its rehabilitative statute. An approach in which we would continue to recognize a state expungement, by whatever name a state chooses to call it, as eliminating a conviction for immigration purposes would be inconsistent with both Congress' focus on the original determination of guilt and on its clear desire to implement a uniform federal approach.

If we were to continue to give effect to state expungements, we would be forced to examine the vagaries of each state's statute to determine if the original determination of guilt survived for some purposes, or whether it was a complete expungement. We do not believe that Congress intends for the existence of a "conviction" to depend on whether or not an individual state would give continuing effect to the original determination of guilt for such purposes as approval or revocation of business or professional licenses, weapons permits, etc. The United States Court of Appeals for the Ninth Circuit has previously criticized such an approach when applying federal law. *See generally United States v. Bergeman*, 592 F.2d 533 (9th Cir. 1979). The result of such an approach would be different treatment, based solely on where the offense occurred, of aliens guilty of the same misconduct, a result which was also expressly disapproved by the Ninth Circuit in *Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994). We agree with the Ninth Circuit's reasoning in *Garberding* that the focus should be on the alien's misconduct rather than the breadth of a state's rehabilitative statute. *Id.* at 1191.

Moreover, when Congress has intended for state law to control in defining when a conviction exists for a federal purpose, it has expressly said so. To clarify its intent regarding whether state expungements should be recognized for the purposes of applying its federal gun control laws, it passed the Firearm Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986), in which it clearly provided that for purposes of that statute a "conviction" should be defined under the law of the state where the offense occurred. *See generally United States v. Bergeman, supra*.[8]  By

---

[7]In effect, the new definition is consistent with the Attorney General's earlier understanding of congressional intent in *Matter of A-F-, supra*, where he found the proper focus to be on the original determination of guilt, rather than on a subsequent state rehabilitative action technically erasing that determination without addressing the merits of the conviction. Of course, the new definition defines "conviction" for all purposes under the Act and is not limited, as was the decision in *Matter of A-F-*, to narcotics convictions. *See Matter of G-, supra.*

[8]In *Bergeman*, the Ninth Circuit stated that, while a state expungement statute could determine the status of a conviction for purposes of state law, it could not ""rewrite histo-

providing the federal definition at section 101(a)(48) of the Act, Congress has most decidedly taken the opposite approach to defining a conviction for immigration purposes.

We also find it significant that, under the new definition, an alien is considered convicted for immigration purposes despite the fact that further proceedings addressing the merits of the original charge might be required before the state would consider him convicted. It would be incongruous for us to interpret the definition to allow an alien, who during the entire period of his probation would have been considered convicted for immigration purposes, to be relieved of the immigration consequences of his misconduct as of the date of a subsequent rehabilitative state action having absolutely no relation to the merits of the charge. Congress has focused on the original determination of guilt and has expressed clear disinterest regarding subsequent state rehabilitative measures. We therefore interpret the new definition to provide that an alien is considered convicted for immigration purposes upon the initial satisfaction of the requirements of section 101(a)(48)(A) of the Act, and that he remains convicted notwithstanding a subsequent state action purporting to erase all evidence of the original determination of guilt through a rehabilitative procedure.

Our decision is limited to those circumstances where an alien has been the beneficiary of a state rehabilitative statute which purports to erase the record of guilt. It does not address the situation where the alien has had his or her conviction vacated by a state court on direct appeal, wherein the court determines that vacation of the conviction is warranted on the merits, or on grounds relating to a violation of a fundamental statutory or constitutional right in the underlying criminal proceedings. We also do not reach the issue of the effect of noncollateral challenges to a conviction on these grounds that are pending in state court while an alien is in deportation proceedings.

---

ry"""" for the purposes of administering federal law. *United States v. Bergeman*, supra, at 536 (quoting *Hyland v. Fukuda*, 580 F.2d 977, 981 (9th Cir. 1978) (quoting *United States v. Potts*, 528 F.2d 883, 887 (9th Cir. 1975) (Sneed, J., concurring in result))). The Supreme Court subsequently approved a similar approach in *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983), a case which, like *Bergeman,* examined whether a conviction existed for purposes of federal gun control laws. Congress disagreed with the Supreme Court's decision in *Dickerson*, however, and responded by amending the federal gun control statute to provide that, for purposes of that statute, "conviction" should be defined under the law where the offense occurred. *See* Firearm Owners' Protection Act. However, *Dickerson* is still cited as authority for the general proposition that federal law governs in the application of federal statutes, absent plain language to the contrary. *See United States v. Cuevas*, 75 F.3d 778 (1st Cir. 1996); *Yanez-Popp v. United States INS, supra*.

## V. THE CONTINUING VIABILITY OF OUR DECISION
## IN MATTER OF MANRIQUE IN LIGHT OF
## RECENT AMENDMENTS TO THE ACT

We conclude that Congress did not intend for the various state rehabilitative measures designed to avoid or erase the stigma of a conviction to be considered in determining whether an alien has been convicted for purposes of applying the immigration laws. We must therefore reconsider our decision in *Matter of Manrique, supra*, which provided that first offenders guilty of simple possession offenses may escape the immigration consequences of their conviction based on their having been the beneficiary of such a state rehabilitative action.

In *Matter of Manrique* we extended the policy of leniency toward first time drug offenders provided in the federal first offender statute at 18 U.S.C. § 3607(a) (1988) to aliens prosecuted under state law upon a demonstration of the following criteria:

(1) The alien is a first offender, i.e., he has not previously been convicted of violating any federal or state law relating to controlled substances.

(2) The alien has pled to or been found guilty of the offense of simple possession of a controlled substance.

(3) The alien has not previously been accorded first offender treatment under any law.

(4) The court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation.

*Matter of Manrique, supra*, at 16.

There is no issue in this case regarding this respondent's satisfaction of each of the four *Manrique* requirements. However, as Congress has now removed state rehabilitative actions as a factor in determining whether an alien is considered convicted for immigration purposes, this respondent's satisfaction of the fourth *Manrique* requirement should be given no effect in determining his deportability.[9] Accordingly, we must decide whether our decision in *Matter of Manrique* has any continuing viability in light of the approach Congress has taken in the IIRIRA toward aliens guilty of criminal misconduct.

The parties provided briefs on this issue upon our request. The respondent, through counsel, takes the position that it cannot be determined from

---

[9]As was the case in *Matter of Manrique*, we are presented here with an alien who has been accorded rehabilitative treatment under a state statute. We will leave the question of the effect to be given in immigration proceedings to first offender treatment accorded to an alien under 18 U.S.C. § 3607 by a federal court to a case when that issue is directly presented.

the legislative history of section 322 of the IIRIRA that Congress has specifically abrogated the holding in *Manrique,* but argues that even if the new definition of "conviction" overrules *Manrique,* the respondent is not deportable because his conviction has already been vacated. The Immigration and Naturalization Service contends that the administratively created rulings defining "conviction" for immigration purposes, including our decision in *Manrique* exempting aliens who would be eligible for first offender treatment under 18 U.S.C. § 3607 from that definition, have been expressly overturned by the new statutory definition of "conviction."

The special treatment accorded in *Matter of Manrique* to first offender aliens who have been the beneficiaries of a state rehabilitative statute did not arise from a statutory provision within the Act. Rather, *Matter of Manrique* evolved from a series of decisions in which several federal courts of appeals, the Attorney General, and this Board, in the absence of specific direction from Congress as to the effect to be given to state rehabilitative actions, have addressed the immigration consequences of drug convictions based on inter-pretations of competing congressional policies. As background, we will sum-marize how we arrived at the holding in *Matter of Manrique*.

As we have discussed, *Matter of A-F-, supra*, represented a departure from long-standing precedent holding that deportability could not be estab-lished by a conviction that had been expunged under a state statute. The Attorney General reasoned in *Matter of A-F-* that the progressive strength-ening of the deportation laws relating to drug offenses and other relevant statutory changes demonstrated a strong congressional policy that was inconsistent with giving effect to state expungement provisions in drug cases. A drug offender was thus considered to be convicted for immigration purposes, despite having been the beneficiary of a state rehabilitative statute that expunged his or her conviction.

However, many years later, the First Circuit found a competing federal policy evidenced in the Federal Youth Corrections Act, ch. 1115, §2, 64 Stat. 1086 (1950) (codified at 18 U.S.C. §§ 5005-5026),[10] which provided juvenile offenders the chance to make a fresh start following their violations of the law. *Mestre Morera v. United States INS*, 462 F.2d 1030 (1st Cir. 1972). In *Matter of Zingis*, 14 I&N Dec. 621 (BIA 1974), we agreed with the First Circuit that convictions set aside pursuant to the Federal Youth Corrections Act could not support a finding of deportability. We then extended this rule, upon a motion by the Service, to juvenile drug offenders convicted under a comparable state law. *Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974).

---

[10]The Federal Youth Corrections Act was repealed, effective October 12, 1984, by the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, tit. II, §§ 218(a)(8), 235(a)(1)(A), 98 Stat. 1837, 2027, 2031.

In *Matter of Werk*, 16 I&N Dec. 234 (BIA 1977), we agreed with the Service's position that the federal first offender statute is for first offenders the equivalent of the Federal Youth Corrections Act, and we held that a drug conviction "expunged" under a state counterpart of the federal first offender statute may not be used as a basis for deportability. *See also Matter of Kaneda*, 16 I&N Dec. 677 (BIA 1979); *Matter of Haddad*, 16 I&N Dec. 253 (BIA 1977). However, in *Matter of Deris*, 20 I&N Dec. 5 (BIA 1989), we interpreted the terms "equivalent" and "counterpart" narrowly, holding that drug offenders who were provided rehabilitative treatment under state statutes that are broader in scope than the federal first offender statute would not be relieved of the immigration consequences of their misconduct, despite their first offender treatment under the state law.

In *Garberding v. INS*, *supra*, the Ninth Circuit rejected the narrow approach we had taken in *Matter of Deris, supra*, citing due process grounds. The Ninth Circuit found no rational basis for treating aliens who have committed their drug offense in a jurisdiction whose rehabilitative statute mirrored the federal first statute differently from those subject to a statute with broader application.

In light of the Ninth Circuit's decision in *Garberding,* we reexamined our position on this issue and held that the policy of leniency shown toward first offenders under the federal first offender statute would uniformly be accorded to aliens who were the beneficiaries of a state rehabilitative statute regardless of how closely that statute was aligned with the federal law, so long as each of the four enumerated elements was satisfied. *Matter of Manrique, supra*, at 64. If our decision in *Manrique* were to stand, this respondent's conviction could not be used as the basis for his deportation.[11]

It cannot be forgotten that *Manrique* and its predecessors were all decided in the absence of any indication from Congress as to whether a state rehabilitative action should be given any effect in immigration proceedings. By providing a federal definition for what shall constitute a conviction for

---

[11]We note that if the respondent had been prosecuted in a federal court, he would not have been eligible for "expungement" of his records as contemplated under 18 U.S.C. § 3607(c) because he was not under the age of 21 when he committed the crime. *See Paredes-Urrestarazu v. United States INS*, 36 F.3d 801 (9th Cir. 1994) (holding that notwithstanding expungement under a California statute, arrest records that would not have been expunged under the federal first offender statute because of the alien's age at the time of the offense could still be considered in determining whether a favorable exercise of discretion was warranted). Rather, this respondent would have fallen within the parameters of § 3607(a) and would have benefitted from a final disposition of his case *without the entry of a judgment of conviction*. As provided in § 3607(b), the effect under either subsection is that the action is not to be considered a conviction "for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." Hence, neither the federal first offender statute nor *Manrique* required final "expungement" before the subject of proceedings could enjoy the benefits of first offender treatment.

immigration purposes, Congress has now spoken on this issue. In interpreting this definition, we have determined that a state action that purports to abrogate what would otherwise be considered a conviction, as the result of the application of a state rehabilitative statute, rather than as the result of a procedure that vacates a conviction on the merits or on grounds relating to a statutory or constitutional violation, has no effect in determining whether an alien has been convicted for immigration purposes.

With the statutory definition of conviction in place, the prior case law and administrative rulings that attempted to reconcile the competing federal policies discussed in *Matter of A-F-, supra*, and *Matter of Werk*, *supra*, and its progeny are no longer controlling. Congress has stated what a conviction is for immigration purposes, and it has not provided any exception for aliens who have been accorded rehabilitative treatment under state law. While it was within the authority of this Board and the federal courts to craft exceptions to administratively created definitions of conviction, to continue to apply a policy exception providing federal first offender treatment to certain drug offenders who have received state rehabilitative treatment, in the face of the definition provided by Congress, would be tantamount to creating a new form of relief that is not provided for in the Act. This we cannot do.

We must presume that Congress is aware of the administrative exception to deportability for a controlled substance conviction that we created in *Manrique,* as well as its own treatment of first offenders under 18 U.S.C. § 3607. Yet Congress failed to provide any exception in section 101(a)(48) of the Act to exempt first offenders determined to be guilty of simple possession of a controlled substance from being considered "convicted" under the Act. Furthermore, despite the expansive sweep of the new legislation affecting criminal aliens, Congress did not amend section 237(a)(2)(B)(i) (formerly section 241(a)(2)(B)(i)) to forgive any drug offense other than the previously stated exception for a single offense of possession for personal use of 30 grams or less of marijuana. If Congress wished to exempt any other drug convictions as a basis of deportability, it would have done so in the course of such sweeping amendments to the Act.

We also note that the expansive definition in section 101(a)(48)(A) of the Act is consistent with the prevailing congressional policy of strict treatment toward criminal aliens in deportation proceedings. Congress may condition the status of an alien upon the absence of a "conviction" as it chooses to define that term. *See Molina v. INS, supra*, at 19. In *Coronado-Durazo v. INS*, 123 F.3d 1322, 1326 (9th Cir. 1997), the Ninth Circuit pointed out that Congress has "clearly spoken against aliens who abuse the hospitality of the United States by committing drug related crimes." For example, recent legislation has denied judicial review to aliens who have committed a controlled substance offense and has eliminated the availability of section

527

212(c) relief to those who have been convicted of controlled substance violations. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, §§ 440(a), (d), 110 Stat. 1213-14 ("AEDPA"); *see also Coronado-Durazo v. INS, supra; Ayala-Chavez v. INS*, 944 F.2d 638, 641 (9th Cir. 1991).

We find no evidence in Congress' recent enactments that it intends to accord special treatment in the application of its immigration laws to first-time drug offenders who have been accorded rehabilitative treatment under a state law. Congress has chosen, consistent with other new provisions in the immigration laws reflecting a strict policy toward criminal aliens, to define the term "conviction," "*with respect to an alien*," to encompass actions which would not generally be considered convictions. We recognize that failing to give effect to state expungements or other state rehabilitative measures in immigration proceedings will necessarily result in unequal treatment of aliens and citizens. An alien who has been the beneficiary of a state rehabilitative statute may continue to be subject to a severe consequence for his misconduct, that of deportation from this country; whereas a citizen accorded similar rehabilitative treatment after the same misconduct may be able to avoid any further consequences of his conviction. However, section 101(a)(48) of the Act does not impose a more severe standard of *conduct* on aliens than is imposed on citizens of our country. The conduct this respondent has admitted would be a violation of the controlled substance statute for aliens and citizens alike. An alien is subject to additional *consequences* as a result of this misconduct. However, the different treatment of aliens seeking the hospitality of our country is precisely the subject of the body of laws codified in the Immigration and Nationality Act.

We find no room in the present statutory scheme for recognizing state rehabilitative actions in the context of immigration proceedings, or otherwise applying a first offender exception to the definition of "conviction" to an alien who has been the subject of such an action. State rehabilitative actions which do not vacate a conviction on the merits or on any ground related to the violation of a statutory or constitutional right in the underlying criminal proceeding are of no effect in determining whether an alien is considered convicted for immigration purposes. We conclude that *Matter of Manrique, supra*, and its predecessors, which sought to balance conflicting policy interests in the absence of direction from Congress as to when an alien is considered to be convicted for immigration purposes, have been superseded by section 101(a)(48)(A) of the Act. Accordingly, we find that this respondent was convicted within the meaning of section 101(a)(48)(A) of the Act upon his guilty plea and the imposition of punishment. We further find that he remains convicted despite the state court's rehabilitative action and that he is therefore deportable under section 241(a)(2)(B)(i) of the Act.

## VI. ELIGIBILITY FOR SECTION 212(c) RELIEF

Having determined that the respondent is deportable, we turn to the question of his eligibility for relief under section 212(c) of the Act. The respondent argues that the Immigration Judge erred in calculating the period he had maintained lawful unrelinquished domicile. However, even if the domicile requirement had been met, recent amendments to the Act have made the respondent ineligible for a section 212(c) waiver. The AEDPA was signed by the President during the pendency of this appeal. Section 440(d) of the AEDPA amended section 212(c) of the Act by eliminating the availability of a waiver to aliens who are deportable by reason of having been convicted of criminal offenses, such as this respondent's, that fall within the parameters of section 241(a)(2)(B) of the Act. The Attorney General has issued a decision applying the amendment to cases pending before this Board on the date that the AEDPA was signed into law.[12] *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996, A.G. 1997). We have determined that the respondent is deportable because he has a "conviction" for a controlled substance violation, as that term is defined for immigration purposes. His conviction also bars him from relief from deportation under section 212(c). Accordingly, the appeal will be dismissed.

**ORDER**:   The appeal is dismissed.

Board Member Anthony C. Moscato did not participate in the decision in this case.

*CONCURRING AND DISSENTING OPINION:* Gustavo D. Villageliu, Board Member, in which Paul W. Schmidt, Chairman; Lory Diana Rosenberg and John Guendelsberger, Board Members, joined

I respectfully concur in part and dissent in part from the majority's decision.

I agree with the majority's decision that the definition of a "conviction," as expressed in section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996), covers convictions that have been technically withheld or deferred pursuant to a rehabilitative statute. Section 101(a)(48)(A) of the Act; Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 322, 110 Stat. 3009-546, 3009-628 ("IIRIRA"). However, I disagree with

---

[12]We note that the Attorney General's directive that proceedings be reopened upon petition by the respondent for the limited purpose of allowing an alien to contest deportability is inapplicable to these proceedings, as this respondent has contested deportability before the Immigration Judge and on appeal.

the majority's dicta that the scope of section 101(a)(48)(A) of the Act is also designed to cover all convictions that have been either vacated or expunged. My disagreement with the majority stems from the express, legislative history of section 101(a)(48)(A), which does not evince any congressional intent to alter the way this Board has treated vacated convictions or non-narcotics convictions that have been expunged pursuant to section 1203.4 of the California Penal Code. *See Matter of Luviano*, 21 I&N Dec. 235 (BIA 1996); *Matter of Sirhan*, 13 I&N Dec. 592 (BIA 1970). In my opinion, the majority's broad construction of section 101(a)(48)(A) is without a sound basis and leads to a result that is far beyond the express intent of Congress.

## I. LEGISLATIVE HISTORY OF SECTION 101(a)(48)(A) OF THE ACT

The majority's conclusion and reasoning for which it found "clear direction" and "a clear indication that Congress intends that the determination of whether an alien is convicted for immigration purposes be fixed at the time of the original determination of guilt, coupled with the imposition of some punishment" is unconvincing. *Matter of Roldan*, 21 I&N Dec. 512, at 521 (BIA 1999). It is clear from the legislative history of section 101(a)(48)(A) that it was primarily designed to address Congress' disenchantment with our definition of a conviction under *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), as well as our practice of not considering a suspended imposition of a sentence as constituting a "sentence imposed." *See generally Matter of Punu*, 21 I&N Dec. 3364 (BIA 1998); *Matter of Esposito*, 21 I&N Dec. 1 (BIA 1995); *Matter of Castro*, 19 I&N Dec. 692 (BIA 1988). Rather than quoting selectively from the legislative history of section 101(a)(48)(A) to determine its intended scope, it is both appropriate and necessary to rely on the entire legislative history underlying the statute which provides the following:

> [S]ection 322—Senate recedes to House section 351. This section amends section 101(a) of the INA to add a new paragraph (48), defining conviction to mean a formal judgment of guilt entered by a court. If adjudication of guilt has been withheld, a judgment is nevertheless considered a conviction if (1) the judge or jury has found the alien guilty or the alien has pleaded guilty or nolo contendere and (2) the judge has imposed some form of punishment or restraint on liberty. This section also provides that any reference in the INA to a term of imprisonment or sentence shall include any period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence.
>
> This section deliberately broadens the scope of the definition of "conviction" beyond that adopted by the Board of Immigration Appeals in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). As the Board noted in Ozkok, there exist in the various States a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be con-

sidered "convicted" have escaped the immigration consequences normally attendant upon a conviction. Ozkok, while making it more difficult for alien criminals to escape such consequences, does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior. For example, the third prong of Ozkok requires that a judgment or adjudication of guilt may be entered if the alien violates a term or condition of probation, without the need for any further proceedings regarding guilt or innocence on the original charge. In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases, the third prong of the Ozkok definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes. This new provision, by removing the third prong of Ozkok, clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction," for purposes of the immigration laws. In addition, this new definition clarifies that in cases where immigration consequences attach depending upon the length of a term of sentence, any court-ordered sentence is considered to be "actually imposed," including where the court has suspended the imposition of the sentence. The purposes of this provision is to overturn current administrative rulings holding that a sentence is not "actually imposed" in such cases. See Matter of Castro, 19 I&N Dec. 692 (BIA 1988); In re Esposito, Interim Decision 3243 (BIA, March 30, 1995).

H.R. Conf. Rep. No. 104-828, at 224 (1996) ("Joint Explanatory Statement").

As can be discerned from the above text, Congress specifically considered the myriad of provisions for ameliorating the effects of a conviction and acted only to remove the last prong of our requirements for finality prescribed in *Matter of Ozkok, supra*. Nothing in the aforementioned legislative history supports a congressional intent beyond its expressed purpose "to overturn current administrative rulings holding that a sentence is not 'actually imposed' in such cases." Joint Explanatory Statement, *supra*, at 224. The majority's conclusion that section 101(a)(48)(A) of the Act should also be applied to situations where the conviction has been properly vacated or expunged is not supported by the text or legislative history of that section, which has a much narrower scope.

In interpreting the scope and breadth of section 322 of the IIRIRA, our task is to interpret the express language and legislative history surrounding the enactment of the statute in a fashion that is both reasonable and logical. When Congress acts to explain in detail its intent behind a statute it enacts, we should proceed with caution and be extremely wary of construing additional intent not already expressed. *See generally Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984) (stating that if Congress has spoken to the precise question at issue and its intent is clear, both the court and the agency must give effect to congressional intent and "that is the end of the matter"). It is compelling, therefore, that the limited congressional history before us does not expressly evince any will on

531

the part of Congress to include all vacated or expunged criminal convictions within the definition of a conviction. Neither the language of section 322 of the IIRIRA, nor its underlying legislative history, requires this Board to find that a properly vacated conviction or one expunged pursuant to section 1203.4 of the California Penal Code constitutes a conviction under section 101(a)(48)(A) of the Act. Notwithstanding the language and express legislative history of section 101(a)(48)(A), however, the majority has elected to engage in a course of statutory construction that leads to an unreasonably broad interpretation that is out of step with the will of Congress. Furthermore, the majority's interpretation violates the rule of statutory interpretation that ambiguities in our immigration laws should be interpreted in a light most favorable to the alien because of the drastic consequences of a deportation order. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *INS v. Errico*, 385 U.S. 214, 225 (1966); *Barber v. Gonzalez,* 347 U.S. 637, 642-43 (1954); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948).

## II. THIS BOARD'S PAST TREATMENT OF VACATED AND CERTAIN EXPUNGED CRIMINAL CONVICTIONS

This Board has long been faced with the daunting task of determining what state court actions constitute a "conviction" with sufficient finality for federal immigration purposes. *See Matter of Ozkok, supra; Matter of L-R-*, 8 I&N Dec. 269 (BIA 1959). It is significant that despite our administrative alterations to the definition of a conviction, both this Board and the United States Court of Appeals for the Ninth Circuit have always treated vacated convictions differently from convictions that have been technically erased, withheld, or deferred. In *Matter of Sirhan, supra*, we held that because an alien's vacated conviction no longer existed, it could not form a basis for deportability under former section 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11) (1970). *Matter of Sirhan, supra*. In arriving at our decision, we found that

> [t]here is . . . no authority holding that a conviction exists where there is no finding by a criminal court that a person is guilty of a crime. On the contrary, when a court acts within its jurisdiction and vacates an original judgment of conviction, its action must be respected.

*Matter of Sirhan, supra*, at 600.

Our view that a vacated conviction does not constitute a conviction for immigration purposes has been reiterated in other published Board decisions. *See, e.g., Matter of Varagianis*, 16 I&N Dec. 48, 50 (BIA 1976) (finding that under New Hampshire law, a drug conviction was merely annulled and not vacated and thus could still be used to establish deportability pursuant to section 241(a)(11) of the Act); *Matter of Tucker*, 15 I&N Dec. 337

(BIA 1975) (holding the same with regard to a California statute); *see also Matter of O'Sullivan,* 10 I&N Dec. 320 (BIA 1963) (holding that a conviction that was dismissed *nolle prosequi* did not constitute a conviction for purposes of establishing deportability under the Act). The Ninth Circuit has similarly held that vacated convictions cannot be used to establish deportability. *See Wiedersperg v. INS*, 896 F.2d 1179 (9th Cir. 1990). In *Wiedersperg*, the court held that an alien whose conviction was vacated on the ground that he had entered his plea of guilty in ignorance of the collateral consequence of deportation could not have evidence of his vacated conviction used against him to establish deportability. *Wiedersperg v. INS, supra*, at 1181-82; *see also Estrada-Rosales v. INS*, 645 F.2d 819 (9th Cir. 1981) (finding that the vacation of a conviction based on a procedural error did not constitute a judicial pardon or a technical expungement of the record following a probationary period and, therefore, the conviction could not be used to establish deportability).

With regard to expunged convictions, this Board has consistently held that nonnarcotics convictions expunged pursuant to section 1203.4 of the California Penal Code are not convictions for immigration purposes. *See Matter of Luviano, supra; Matter of Ibarra-Obando*, 12 I&N Dec. 576 (BIA 1966; A.G. 1967); *Matter of G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961); *Matter of A-F-*, 8 I&N Dec. 429 (BIA, A.G. 1959). It is noteworthy that we certified our decision in *Matter of Luviano, supra*, to the Attorney General for review pursuant to 8 C.F.R. § 3.1(h)(ii) (1995). Such review remains pending. Moreover, since the enactment of section 101(a)(48)(A) of the Act, we certified an unpublished decision to the Attorney General in which we held that our decision in *Matter of Luviano, supra*, regarding expunged convictions, was not affected by the new definition of a conviction or the Ninth Circuit's decision in *Carr v. INS*, 86 F.3d 949 (9th Cir. 1996). That decision also remains pending before the Attorney General. Accordingly, by interpreting section 101(a)(48)(A) in an overly broad fashion, the majority has not only contravened our past treatment of certain expunged convictions, it has, in effect, also circumvented the pending review of the Attorney General in the two aforementioned cases.

After amending our definition of a conviction in *Matter of Ozkok, supra*, we expressly overruled our decisions in *Matter of Garcia*, 19 I&N Dec. 270 (BIA 1985); *Matter of Zangwill*, 18 I&N Dec. 22 (BIA 1981); *Matter of Seda*, 17 I&N Dec. 550 (BIA 1980); *Matter of Robinson*, 16 I&N Dec. 762 (BIA 1979); *Matter of Varagianis, supra*; and *Matter of Pikkarainen*, 10 I&N Dec. 401 (BIA 1963), to the extent that they relied on the former definition of a conviction expressed in *Matter of L-R-, supra*. It is significant that we did not overrule our holdings in *Matter of Sirhan, supra; Matter of Varagianis, supra; Matter of Tucker, supra; Matter of Ibarra-Obando, supra*; and *Matter of G-, supra, that vacated criminal con-*

victions and certain expunged convictions were not convictions for immigration purposes. This is a critical point considering that Congress' legislative definition of a conviction under section 101(a)(48)(A) of the Act simply codifies the first two elements of our definition in *Matter of Ozkok, supra*, while excising the third and final element. Absent specific statutory language or legislative history to the contrary, I see no reason why we should break from the practice of this Board and the Ninth Circuit of not considering vacated and certain expunged convictions to be convictions for immigration purposes.

## III. CONCLUSION

In interpreting the scope of section 101(a)(48)(A) of the Act as covering convictions that have been vacated and expunged, the majority has strayed from the express legislative history underlying the section as well as the precedent decisions of this Board and the Ninth Circuit. The express legislative history of section 101(a)(48)(A) does not evince any desire on the part of Congress to alter the way that this Board and the courts have traditionally treated vacated and expunged convictions. Accordingly, I respectfully concur in part and dissent in part from the majority's decision.

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully dissent.

I agree wholeheartedly with the dissenting opinion of Board Member Villageliu, which concludes that the majority's construction of section 101(a)(48) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48) (Supp. II 1996),[1] as encompassing convictions that have been expunged and no longer exist, is unsupported either by its statutory language or by the pertinent legislative history found in the Joint Explanatory Statement.[2]  I write separately, as, in addition, I find the majority's interpretation of section 101(a)(48) of the Act specifically erroneous with regard to the effect of 18 U.S.C. § 3607 (1994) on a first-time state offense for which the respondent would not be deportable had he been prosecuted under federal law. *Cf. Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994); *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995).

---

[1]*See also* Illegal Immigrant Reform and Responsibility Act, Division C of Pub. L. No. 104-208, § 322, 110 Stat. 3009-546, 3009-628 ("IIRIRA").

[2]H.R. Conf. Rep. No. 104-828, at 224 (1996).

As the appeal before us involves a state disposition vacating the respondent's guilty plea to a first offense for possession of a controlled substance, the issue presented actually is not about the proper treatment of state expungement provisions. For the past 40 years, the Board has followed the decision of the Attorney General in *Matter of A-F-*, 8 I&N Dec. 429 (BIA, A.G. 1959), which holds that an expungement under state law of a conviction for a controlled substance offense is ineffective to erase the effect of the conviction for immigration purposes. *See also Garberding v. INS, supra,* at 1189. Although the majority goes into some detail to address deferred adjudications under state statutory schemes, as well as our prior decision in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), and what constitutes a conviction under section 101(a)(48) of the amended statute, we already have addressed these matters. *See Matter of Punu*, 22 I&N Dec. 3364 (BIA 1998) (reviewing the legislative history pertaining exclusively to deferred adjudications under state law); *cf. Matter of Roldan*, 22 I&N Dec. 3377, at 4-8 (BIA 1999).

Moreover, notwithstanding the majority's effort to characterize every "rehabilitative" state provision generically, neither section 101(a)(48) of the Act, nor our interpretation and application of that section in *Matter of Punu, supra*, restrict the effect of a federal statute such as 18 U.S.C. § 3607 on the proper construction of a state disposition of an offense for which the respondent would not be deportable had he been prosecuted under federal law. By contrast, the Board's decisions in *Matter of Deris*, 20 I&N Dec. 5 (BIA 1989), and *Matter of Werk*, 16 I&N Dec. 234 (BIA 1977), which were reaffirmed in pertinent part by the decision of the United States Court of Appeals for the Ninth Circuit in *Garberding v. INS*, *supra*, hold that by enacting the federal first offender statute, Congress plainly expressed its intent *not* to characterize a first offense such as the respondent's as a conviction "for any . . . purpose." 18 U.S.C. § 3607(b); *see also Matter of Manrique, supra*, (adopting the Ninth Circuit's reasoning as to the applicability of 18 U.S.C. § 3607 in determining which state offenses would not render a respondent deportable).

The issue before us, therefore, is whether our decision in *Matter of Manrique, supra*, has been superseded or must be modified in light of Congress' enactment of section 101(a)(48) of the Act. I find that 18 U.S.C. § 3607, representing a congressionally mandated exception to the definition of a conviction generally, remains in force and has not been repealed either expressly or by implication by Congress' enactment of section 101(a)(48) of the Act. Both section 101(a)(48) of the Act and 18 U.S.C. § 3607 may be given effect by recognizing the respondent's vacated conviction as one for which he would not be deportable if prosecuted under federal law, and finding that it may not be relied upon for purposes of determining deportability. Accordingly, I dissent.

535

## I. SECTION 3607 OF TITLE 18 OF THE UNITED STATES CODE

The federal first offender statute, which addresses pre-judgment probation, record of disposition, and expungement of records for certain persons charged under the Controlled Substance Act, 21 U.S.C. § 844, provides as follows:

(a) PRE-JUDGMENT PROBATION.—If a person found guilty of an offense described in section 404 of the Controlled Substances Act (21 U.S.C. 844)—

(1) has not, prior to the commission of such offense, been convicted of violating a Federal or State law relating to controlled substances; and

(2) has not previously been the subject of a disposition under this subsection;

the court may, with the consent of such person, place him on probation for a term of not more than one year without entering a judgment of conviction. . . . At the expiration of the term of probation, if the person has not violated a condition of his probation, the court shall, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation.

(b) RECORD OF DISPOSITION.—A nonpublic record . . . shall be retained by the Department of Justice solely for the purpose of use by the courts in determining in any subsequent proceeding whether a person qualifies for the disposition provided in subsection (a) or the expungement provided in subsection (c). A disposition under subsection (a), or a conviction that is the subject of an expungement order under subsection (c), *shall not be considered a conviction* for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose.

(c) EXPUNGEMENT OF RECORD DISPOSITION.—If the case against a person found guilty of an offense under section 404 of the Controlled Substances Act (21 U.S.C. 844) is the subject of a disposition under subsection (a), and the person was less than twenty-one years old at the time of the offense, the court shall enter an expungement order upon the application of such person . . . .

18 U.S.C. § 3607 (emphasis added).[3] Thus, § 3607(b) provides explicitly, using plain language to convey congressional intent, that treatment under either § 3607(a) or § 3607(c) shall not be considered a conviction "*for any . . . purpose.*"

---

[3]As the United States Court of Appeals for the Ninth Circuit has recognized, the "Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 219, 98 Stat. 1837, 2027 (1984) (effective Nov. 1, 1987) [repealed the former first offender provision and introduced] [s]ection 3607 of Title 18, United States Code . . . . For the purposes of our analysis, the differences between 21 U.S.C. § 844(b) and 18 U.S.C. § 3607 are immaterial. As the Senate Report states, '[p]roposed 18 U.S.C. § 3607 carries forward the provisions of 21 U.S.C. § 844(b) . . . if there has been no previous conviction of an offense under a Federal or State law relating to controlled substances.' S. Rep. No. 98-225, 98th Cong., 2d Sess. 133 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3316." *Paredes-Urrestarazu v. United States INS*, 36 F.3d 801, 811 n.10 (9th Cir. 1994).

The Supreme Court's decision in *Chevron, U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), invoked by the majority in support of its interpretation of the scope of Congress' enactment of section 101(a)(48) of the Act in 1996, is no less applicable to Congress' enactment of 18 U.S.C. § 3607, which became effective in 1988. *Cf. Matter of Roldan, supra*, at 11. Not only does the plain language of § 3607 mandate that a first offender disposition is not to be considered a "conviction," but this mandate must be given effect. *See COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989) (stating that "whole statute" interpretation dictates that statutory sections should be read in harmony to achieve a harmonious whole); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (holding that a construction of the statutory language which takes into account the design of the statute as a whole is preferred).

## A. Effect of 18 U.S.C. § 3607 on Deportability

In enacting a federal first offender provision, Congress specifically provided an exception to the procedures and consequences that ordinarily apply to the prosecution and conviction of an individual charged with a controlled substance violation under 21 U.S.C. § 844. The federal first offender statute provides that in the case of an individual who is either a first-time offender or a youthful offender under 21 years of age, a disposition reached under the terms of § 3607 is *not* a conviction "for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." 18 U.S.C. § 3607(b).[4]

This federal exception to the treatment of a disposition or expungement as a "conviction" constitutes a federal standard. *Id.; see also United States v. Nardello*, 393 U.S. 286, 293-94 (1969) (finding it a fallacy to presume that in a federal act, Congress would incorporate state labels for particular offenses or give controlling effect to state classifications). The Board consistently has recognized the propriety of relying on a federal standard in order to promote uniformity in construing and applying the provisions of the Act. *See, e.g., Matter of Batista-Hernandez*, 21 I&N Dec. 955 (BIA 1997) (addressing the propriety of adopting a federal definition in considering both state and federal controlled substance offenses); *Matter of L-G*, 21 I&N Dec. 89 (BIA 1995) (analyzing the term "any felony" in 18 U.S.C.

---

[4]The ultimate disposition of a criminal charge under 18 U.S.C. § 3607 may take one of two forms. The first, limited to the case of a first-time offender, involves pre-judgment probation, which if completed successfully, *does not constitute a judgment of conviction*. 18 U.S.C. § 3607(a). The second, applicable to the case of a youthful offender, involves a disposition under § 3607(a) that is subject to expungement under 18 U.S.C. § 3607(c).

§ 924(c)(2) (1994) to identify the range of state convictions capable of being characterized as drug-trafficking offenses under section 101(a)(43) of the Act); *Matter of A-F-, supra*, at 466 (acquiescing to the federal policy to treat narcotics offenses seriously and finding it inappropriate for an alien's deportability for criminal activity to be dependent upon "the vagaries of state law"); *see also Matter of Punu, supra*, (BIA 1998) (superseding the prior federal standard for a conviction developed by the Board in *Matter of Ozkok, supra*, at 549). The federal courts have affirmed the Board's application of a federal standard in construing state charges. *Paredes-Urrestarazu v. United States INS*, 36 F.3d 801 (9th Cir. 1994); *Yanez-Popp v. United States INS*, 998 F.2d 231 (4th Cir. 1993) (following the general proposition in *Dickerson v. New Banner Institute*, 460 U.S. 103 (1983), that the determination whether a conviction exists for purposes of federal gun control laws is a question of federal, not state law, despite the fact that the predicate offense and its punishment are defined by state law).[5]

In construing charges of deportability under Act, the Board has consistently extended the federal exception for first-time and youthful offenders to charges lodged in immigration proceedings, including charges based on state offenses. As discussed below, in *Matter of Manrique, supra*, we followed over 20 years of Board precedent and agreed that Congress' express intent not to impose the consequences of conviction for a controlled substance offense in the context of a federal criminal prosecution of a first-time or youthful offender was applicable to charges brought in immigration proceedings that were based on a state offense. *See, e.g., Matter of Deris, supra; Matter of Kaneda*, 16 I&N Dec. 677 (BIA 1979) (holding that a Virginia statute, limited to first-time and youthful offenders to allow them a second opportunity to lead law-abiding lives, was consistent with the thrust of the comparable federal provision); *Matter of Haddad*, 16 I&N Dec. 253 (BIA 1977) (holding that dismissal of proceedings pursuant to a Michigan statute under which the respondent was found guilty of possession of marihuana was a counterpart to the federal first offender statute); *Matter of Werk, supra* (holding that when a conviction has been expunged under the provisions of a state statute that is the counterpart of 21 U.S.C. § 844(b)(1), that conviction may not be used as a basis for finding deportability under section 241(a)(11) of the Act); *Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974)(addressing youthful offenders charged under state law comparable to federal law); *Matter of Zingis*, 14 I&N Dec. 621 (BIA 1974) (addressing

---

[5]Indeed, at least some of my colleagues in the majority recently emphasized the significance of applying a federal standard. *See Matter of Luviano*, 21 I&N Dec. 235 (BIA 1996) (Hurwitz, dissenting, joined by Vacca, citing numerous federal court decisions for the principle that Congress intended the determination whether an alien has been "convicted" for immigration purposes to be made pursuant to federal law and policies).

youthful offenders charged under federal law).

The Board's comparison of state dispositions with the terms of the federal first offender statute is consistent with federal court interpretations, which have emphasized that dispositions under § 3607 apply not only to offenses prosecuted under § 844, but to state and other federal offenses "described in" that section. *See United States v. Rivera*, 996 F.2d 993, 995 (9th Cir. 1993) (concluding that if Congress had wanted to restrict the statute's reach to federal convictions, it could easily have said that predicate offenses are limited to federal law); *United States v. Barial*, 31 F.3d 216, 217-18 (4th Cir. 1994) (holding that a controlled substance violation within the jurisdiction of the United States Park Police is amenable to a disposition under § 3607(a), which accommodates a broad reading of offenses subject to its terms).

Similarly, we have acknowledged that in 1994, the Ninth Circuit not only endorsed the Board's extension of the provisions of § 3607 to state offenses, but criticized the Board for an impermissibly narrow application of the statute, finding "no rational basis for treating the alien [in Garberding] differently from one whose drug possession 'conviction' was 'expunged' under a state statute considered to be an exact counterpart to the federal statute." *Matter of Manrique, supra*, at 62; *see also Paredes-Urrestarazu v. United States INS, supra*, at 815 (concluding that the interest in uniform implementation of the immigration laws provides a rational basis for not giving effect to a state procedure where the conviction in question would not have been expunged under the federal first offender statute).

## B. Effect of Congress' Enactment of Section 101(a)(48) of the Act on 18 U.S.C. § 3607

The addition of a statutory definition of "conviction" by section 322(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628 ("IIRIRA"), does not disturb either our commitment to a uniform federal standard or our construction of § 3607. For the reasons discussed below, I conclude that the first offender exception under § 3607 continues to apply to qualifying state, as well as federal, offenses.

Congress did not act affirmatively to repeal 18 U.S.C. § 3607, either generally, or as applied to "convictions" under the immigration laws. *Cf.* IIRIRA § 322 (enacting section 101(a)(48) of the Act). Repeal by implication is disfavored. *See Sharma v. INS*, 89 F.3d 545, 547-48 (9th Cir. 1996); *see also United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168 (1976) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored."). To the contrary, "'[w]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective.'" *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976)

(quoting *Morton v. Mancari,* 417 U.S. 535, 551 (1974)). Specifically, the Supreme Court has emphasized that "[w]e must read the statutes to give effect to each if we can do so while preserving their sense and purpose." *Watt v. Alaska*, 451 U.S. 259, 267 (1981).

Comparing the terms of the earlier and more narrow National Bank Act with the later and more broad Securities Exchange Act, in *Radzanower v. Touche Ross & Co., supra*, the Supreme Court conceded that "unless a 'clear intention otherwise' can be discerned, the principle of statutory construction discussed above counsels that the specific . . . provisions [of the law existing at the time the new statute was enacted] are applicable." *Id.* at 154 (citing *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222 (1957). The absence of specific language negating the operative statutory section may be dispositive. *See Estate of Bell v. Commissioner*, 928 F.2d 901, 903-04 (9th Cir. 1991) (quoting the Supreme Court's statement in *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984) that the "[c]ourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement").

As the Supreme Court reiterated, there are but two well-settled categories of repeal by implication. First, repeal by implication will be observed "'where provisions in . . . two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one.'" *Radzanower v. Touche Ross & Co., supra*, at 154 (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936). Second, such repeal may exist "'if the later act covers the whole subject of the earlier one and is clearly intended as a substitute.'" *Id.* "'But, in either case, *the intention of the legislature to repeal must be clear and manifest*. . . .'" *Id.* (emphasis added); *see Rodriguez v. United States*, 480 U.S. 522, 524 (1987); *see also Moyle v. Director, Office of Workers' Compensation Programs*, 147 F.3d 1116, 1120 (9th Cir. 1998) *cert. denied*, 119 S.Ct. 1451 (1999); Northwest Forest Resource Council v. Pilchuck Audobon Society, 97 F.3d 1161, 1166 (9th Cir. 1996).

The same analysis is applicable here. Section 3607, which embodies a narrow exception to what otherwise might constitute a "conviction," cannot be said to have been repealed or rendered inapplicable by Congress' enactment of section 101(a)(48) of the Act. No specific language expressly repealing 18 U.S.C. § 3607 as applied to immigration proceedings exists in the statute, and there is no indication whatsoever in the legislative history that Congress intended section 101(a)(48) of the Act to supersede the applicability of the federal first offender statute, either to federal prosecutions actually brought under its terms or to state prosecutions that could have been brought under its terms.

Moreover, Congress must be deemed to be aware of controlling judicial and administrative decisions when it acts. As discussed below, the first offender statute has been applied to both state and federal dispositions sub-

mitted in deportation proceedings as far back as 1977 and as recently as 1995.

Congress is deemed to be aware not only of prior interpretations of a statute, but also of pre-existing case law when it acts. *Scheidemann v. INS*, 83 F.3d 1517, 1526 (3d Cir. 1996); *see also Lorillard v. Pons*, 434 U.S. 575, 580 (1978) (stating that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change") (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975); *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 366 (1951); *National Lead Co. v. United States*, 252 U.S. 140, 147 (1920); 2A C. Sands, *Sutherland on Statutory Construction* § 49.09 (4th ed. 1973), and cases cited). In enacting a statutory definition of a "conviction" in the IIRIRA, Congress demonstrated a detailed knowledge of existing judicial and administrative interpretations of that term as used in relation to immigration law violations. As in *Lorillard v. Pons, supra*, Congress' selectivity in eliminating one particular element of our prior definition of a conviction "strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the [existing] remedies and procedures**.**" *Id.* at 582.

Furthermore, the enactment of section 101(a)(48) of the Act does not create an "irreconcilable conflict" with the terms of 18 U.S.C. § 3607, as that section merely constitutes an exception to the criteria that ordinarily would warrant a finding that a conviction exists. *Radzanower v. Touche Ross & Co., supra*, at 154. "'Repeal is to be regarded as implied only if necessary to make the (later enacted law) work . . . .'" Id. at 155 (quoting *Silver v. New York Stock Exchange*, 373 U.S. 341, 357 (1963)). Section 101(a)(48) of the Act is readily given effect as applied to deferred adjudications under state law. *Cf. Matter of Punu, supra*. Similarly, section 101(a)(48) of the Act does not cover "the whole subject" addressed by 18 U.S.C. § 3607, nor does it completely substitute for 18 U.S.C. § 3607. *Radzanower v. Touche Ross & Co., supra*, at 154; *Sharma v. INS, supra*. Instead, the limited federal exception continues to apply to a narrow group of cases, notwithstanding the subsequent change in the law.

## II. MATTER OF MANRIQUE AND SECTION 101(A)(48) OF THE ACT

Historically, the Attorney General has interpreted congressional intent as calling for the harsh treatment of convicted noncitizen drug offenders. Consequently, in *Matter of A-F-*, *supra,* the Attorney General ruled that an after-the-fact state expungement of a drug conviction need not be honored and that such a conviction would continue to form a ground for deportation. Section 3607, however, is a congressionally mandated *exception* superseding any other federal definition of a "conviction," based on Congress' real-

istic appraisal of the breadth of drug abuse and the need to acknowledge the rehabilitative possibilities in the case of first-time and youthful offenders. It reflects a contrary intent on the part of Congress, which deliberately created an exception for first-time and youthful drug offenders and overrides other expressions of legislative intent to harshly punish such conduct.

In *Matter of Manrique, supra*, at 63 n.8, the Board noted that it "would now consider a person 'convicted' under the statutes in those cases, *but for the policy of leniency toward first offenders*." (Emphasis added.) This interpretation is consistent with the language presently in the statute. *Id.* (citing *Matter of Seda*, 17 I&N Dec. 550 (BIA 1980), *overruled in part, Matter of Ozkok, supra*). The policy of leniency referred to is federal legislative policy, reflected in congressional enactments. *Matter of Manrique, supra*, makes clear that, despite the imprecise and inexact references previously relied on by the Board and the Immigration and Naturalization Service, we now recognize that a disposition under 18 U.S.C. § 3607(a) is *not* a conviction. *Matter of Manrique*, *supra*, at 10 n.7. While some confusion may have been created as the result of the statutory subsections contained in § 3607, one of which refers to "expunged" convictions, *see, e.g.*, § 3607(c), the fact of the nonexistence of a conviction under 18 U.S.C. 3607(b), and the fact of an expungement of a conviction, generally speaking, are distinct and are not to be confused. *Id.*

Thus, in *Matter of Manrique,* we recognized that *Matter of A-F-, supra*, stands for the proposition that a drug offender's *expunged* conviction is not to be excused for immigration purposes. *See also Garberding v. INS, supra*, at 445-46 (acknowledging that a drug offender cannot escape deportation by a technical erasure of his conviction). We acknowledged that, in the cases of youthful offenders, there is a rational basis for an exception to the rule under the former Federal Youth Correction Act ("FYCA") (now codified as 18 U.S.C. § 3607(c)), which the federal courts found to be equally as compelling as Congress' concern that drug offenders be deported. *See Mestre Morera v. United States INS*, 462 F.2d 1030 (1st Cir. 1972); *see also Matter of Andrade, supra; Matter of Zingis, supra*. We also recognized that "[w]hen a similar issue arose  regarding . . . first offender treatment," the Service opined that the first offender provisions were for first offenders what the youthful corrections provisions were for minors. *Matter of Manrique, supra*, at 10; *see also Matter of Andrade, supra*. We reaffirmed and adopted that reasoning, applying it to cases arising under 18 U.S.C. § 3607.

### A. Historical Treatment of Dispositions Comparable to the Federal First Offender Statute

The crux of the Board's reaffirmation of the applicability of 18 U.S.C. § 3607 in *Manrique* is plain:

> It is clear that the policy not to deport aliens treated as first offenders or youth offenders under state laws stems from the Solicitor General's recommendation in *Matter of Andrade, supra*, that this leniency should be extended equally to any alien drug offender who could have obtained the same treatment under federal law if he had been subject to federal rather than state prosecution. *See also Rehman v. INS, supra. The* Ninth Circuit has agreed that the appropriate focus in this regard should be on the alien's conduct, rather than on the breadth of the state rehabilitative statute. *Garberding v. INS, supra*, at 1191.

*Matter of Manrique, supra*, at 63-64 (citation omitted).

As the Board stated in *Manrique*, the Board's construction of federal ameliorative statutes as having state counterparts is found in the Board's decision in *Matter of Andrade, supra*. There, the Board extended the rule that a conviction under the federal youth offender statute would not constitute a basis for deportation to drug violators who had been treated as youth offenders under comparable state law. *See also Matter of Zingis, supra*, at 622-23 (citing *Mestre Morera v. United States INS, supra*, and holding that Congress' desire to give youth a new chance "would be thwarted by deportation. Its policy to provide for expungement of offenses by juveniles is as important a congressional policy as the policy to deport narcotics offenders.").

The Board's decision in *Matter of Andrade, supra*, relied on the statements of then Solicitor General Robert Bork that "[d]eportation statutes, because of their drastic consequences, must be strictly construed. *E.g., Barber v. Gonzales*, 347 U.S. 637, 642-643; *Fong How Tan v. Phelan*, 333 U.S. 6, 10. Accordingly, a state conviction of a youth offender for a marihuana offense that has been expunged following satisfactory rehabilitative treatment should not be regarded as the basis of deportation in the absence of persuasive reasons or a clear statement of congressional intent." *Id.* app. at 655. In addition, the then Solicitor General concluded that, "*given the role necessarily played by state law in deportation proceedings,* . . . there is little, if any, reason to justify a different result where the expungement of a youth offender's conviction occurred pursuant to state law. The same result can and, I think, should be reached in such a case." *Id.* app. at 657. Moreover, in *Andrade,* then Solicitor General Bork noted:

> It has sometimes been suggested, as a reason for disregarding expungement under state law when basing deportation under Section 1251(a)(11) on a state conviction, that deportation is a federal matter which should not be subjected to the varied consequences that states may choose to attach to convictions for offenses that justify deportation. This approach assumes, in effect, that all issues concerning deportation must be governed solely by federal law.

*Id.* (citations omitted). The Solicitor General further recognized that

> [i]n many cases, however, the federal rule of construction may call for reference to and the reliance upon state law. See, *e.g., Reconstruction Finance Corp. v. Beaver County,* 328

U.S. 204, 209-210;  *De Sylva v. Ballentine*, 351 U.S. 570, 580-581;  cf. *United States v. Yazell*, 382 U.S. 341, 354-358. In the context of deportation, it is unquestionable that state law has a role to play, in that certain convictions for violation of state law are grounds for deportation, and pardons by governors may bar a state conviction from being so used.

. . . .

Thus, to confine the result in *Morera* to youth offender convictions expunged under the federal law would tend to produce the anomalous situation where . . . a youth offender . . . prosecuted in state court and convicted on a trivial marihuana offense would therefore be deportable, even if the conviction were expunged.

Such disparity is difficult to justify or defend, and should be avoided if possible by a reasonable construction of the statute.

*Id.* app. at 657-59; *accord Garberding v. INS, supra.*

This is not a novel proposition, but reflects a consistently held position of the Board and the federal courts. For example, in *Matter of Deris, supra,* citing *Matter of Werk, supra*, the Board found that "[i]n passing the first offender statute, Congress expressed its intent to rehabilitate the individual user of drugs. *This policy has been considered to be of equal importance to the congressional policy to deport narcotics offenders.*"[6]  *Matter of Deris, supra*, at 10 (footnote omitted). In *Werk,* the Board agreed with the position of the Immigration and Naturalization Service that the legislative history at H.R. Rep. No. 91-1444, *reprinted in* 1970 U.S. Code Cong. & Admin News 4566, 4616,  "'indicates that discharge and dismissal under [the former first offender statute] shall not be deemed conviction of a crime.'" *Matter of Werk, supra*, at 235 (quoting the Service).

The Board reached its conclusion in *Matter of Deris* that state statutes that are counterparts to the first offender statute do not support a finding of deportability by referring to the Board's treatment of federal youthful offender provisions. *See Matter of Werk, supra*, at 235. Therefore, the youthful and first offender exceptions to what constitutes a "conviction" extend to state convictions, and remain applicable today.

### B. Dissimilarity Between a Statute Similar to 18 U.S.C. § 3607 and Expungement

In actuality, the case before us is not an expungement case, but  a case involving whether a conviction may be considered to exist "for any . . . pur-

---

[6]The Board noted that "The legislative history of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236, which enacted the original federal first offender statute at 21 U.S.C. § 844(b) (1970), states that the philosophy behind the act included the following goals:  to rehabilitate rather than punish the individual user and to attack illegal traffic in drugs with the full power of the Government. *See H.* R. Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.C.C.A.N 4566, 4575." *Matter of Deris, supra*, at 10 n.6.

pose." 18 U.S.C. § 3607(b). As addressed in *Garberding v. INS, supra*, and subsequently conceded by the Board as applying in *Matter of Manrique, supra*, the constitutional guarantee of equal protection requires us to give the same effect to a disposition under state law that we would be bound to give had the respondent been prosecuted under 18 U.S.C. § 3607 itself. As the Board stated in *Matter of Dillingham*, 21 I&N Dec. 1001 (BIA 1997),

> Prior to the Ninth Circuit's decision in *Garberding v. INS*, *supra,* the general rule was that expungement of a conviction for a controlled substance offense would not allow an alien to avoid deportation unless the conviction was expunged under the Federal First Offender Act or a state counterpart thereof. In that case, however, the Ninth Circuit found it was wholly irrational, and thus violated an alien's equal protection rights, to base a deportation order on the fortuitous circumstance that a state statute under which an alien's drug conviction was expunged was not a state counterpart of the Federal First Offender Act, where the alien met the criteria for expungement under that Act. . . . This Board agreed with the Ninth Circuit's analysis and held in *Matter of Manrique*, *supra,* at 64, that "an alien who has been accorded rehabilitative treatment under a state statute will not be deported if he establishes that he would have been eligible for federal first offender treatment under the provisions of 18 U.S.C. § 3607(a) . . . had he been prosecuted under federal law."

*Id.* at 1002-3 (footnote omitted).

In the case of an "expungement" under 18 U.S.C. § 3607, it is the legislative branch that has determined to allow an ameliorative mechanism to overcome and even obviate the fact that a conviction has previously been entered. The operation of such provisions does not rely on a specific executive determination relevant to an individual case, but is founded on the notion that post-conviction conduct may warrant the erasure of a conviction for certain specified purposes. *See, e.g., Matter of Luviano*, 21 I&N Dec. 235 (BIA 1996).

As I have clarified, 18 U.S.C. § 3607 contains two independently operative provisions—(a) and (c). The former provision is a pre-judgment disposition and does not involve a conviction, and the latter provision appears to involve an expungement of a pre-judgement disposition. Neither may be treated as a conviction for any purpose. 18 U.S.C. § 3607(b). Therefore, § 3607 is not, by any stretch of the imagination, a typical expungement provision. Congress specifically mandated to the contrary.

Simple logic also leads to the conclusion that dispositions under 18 U.S.C. § 3607 are not "expungements," in the ordinary sense of the word, since a *conviction* must preexist an "expungement" in order for such ameliorative action to have anything to expunge. *See, e.g.*, § 3607(a). It is stated unequivocally in § 3607 that the dispositions contained in its subsections shall not be treated as a conviction for any purpose. 18 U.S.C. § 3607(b). It therefore is wholly improper and inappropriate to refer to dispositions under § 3607 as "convictions" which have been "expunged."

Even were we to interpret the change in section 101(a)(48)(A) of the

545

Act as affecting those dispositions that might otherwise be construed as expunged convictions, this would not alter the way in which we are bound to construe dispositions under § 3607 or its counterparts, as established in *Garberding v. INS, supra*, and *Matter of Manrique, supra*. As the majority acknowledges, "There is no issue in this case regarding this respondent's satisfaction of each of the four *Manrique* requirements" that we employ to determine whether the disposition under state law is comparable to a prosecution under the federal first offender statute. *Matter of Roldan, supra*, at 16 (BIA 1999). Thus, the respondent is not deportable.

## III. CONCLUSION

In conclusion, the enactment of section 101(a)(48) of the Act does not act to repeal 18 U.S.C. § 3607 as applied to determining deportability. As in *Radzanower v. Touche Ross & Co., supra*, at 155, "[I]t is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem." Rather, "when two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Morton v. Mancari, supra*, at 551.